*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PHARES A. NOEL II,

Plaintiff-Appellant,

v

SCHOLASTIC SOLUTIONS, LLC, DIANE
FISHER, and TERRENCE L. CURRY,

Defendants-Appellees,

and

JOHN BOWERS and BOWERS AND
COMPANY,

Defendants.

UNPUBLISHED
October 10, 2019

No. 343580
Oakland Circuit Court
LC No. 2017-157859-CB

PHARES A. NOEL II and SCHOLASTIC
SOLUTIONS, LLC,

Plaintiffs-Appellants,

v

DIANE FISHER,

Defendant-Appellee.

No. 347056
Oakland Circuit Court
LC No. 2018-165116-CB

Before: RIORDAN, P.J., and K. F. KELLY and CAMERON, JJ.

PER CURIAM.

These consolidated appeals arise out of two lawsuits involving a business dispute between plaintiff Phares A. Noel II, and defendant Diane Fisher, who were the two founding

-1-

members of a closely held limited liability company (LLC), Scholastic Solutions, LLC ("Scholastic"). In the appeal arising out of the first action (Docket No. 343580), Noel appeals three opinions and orders, which in concert granted summary disposition in favor of defendants Scholastic, Fisher, and Terrence L. Curry.[1] In the appeal arising out of the second action (Docket No. 347056), Noel and Scholastic appeal the trial court's opinion and order, granting summary disposition in favor of Fisher, in part, on grounds of res judicata. In both appeals, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2011, Noel and Fisher entered into an operating agreement concerning Scholastic ("the operating agreement"), which afforded Fisher a majority (51%) membership interest and provided a minority (49%) interest to Noel. The "sharing ratios," which were used to determine capital contributions and distributions, were commensurate with Fisher and Noel's respective ownership interests. In pertinent part, the operating agreement provided as follows:

> 1.3. **Purposes.** The purposes of the Company are to engage in any activity for which limited liability companies may be formed . . . , including but not limited to the development, creation, management, operation and maintenance of educational institutions, . . . as well as charter schools and academies.

> \* \* \*

> 2.1. **Books and Records.** The Company will maintain complete and accurate books and records of the Company's business and affairs as required by the Act [i.e., the Michigan Limited Liability Company Act, MCL 450.4101 *et seq*.]. These books and records will be kept at the Company's Registered Office and shall be available to all members during regular business hours.

> 2.2. **Fiscal Year.** Accounting. The Company's fiscal year will be the calendar year. The particular accounting methods and principles to be followed by the Company will be selected by the Managers from time to time.

> 2.3. **Reports.** The Managers will provide reports concerning the financial condition and results of operation of the Company and the Capital Accounts of the Members to the Members in the time, manner and form as the Managers determine. These reports must be provided at least annually as soon as practicable after the end of each calendar year and will include a statement of

---

[1] At all relevant times, John Bowers was the Certified Public Accountant for Scholastic, and Bowers and Company was the Certified Public Accountant Firm for Scholastic. Noel does not contest the trial court's decision to grant summary disposition in favor of defendants Bowers and Bowers and Company in Docket No. 343580. Therefore, we need not address the claims that were filed by Noel in relation to Bowers and Bowers and Company and the trial court's decision to grant summary disposition on those claims.

each Member's share of profits and other items of income, gain, loss, deduction and credit.

* * *

4.2. **Distributions.** The Managers may make distributions to the Members from time to time. Distributions may be made only after **the Managers determine in their reasonable judgment**, that the Company has cash on hand exceeding the [Company's] current and anticipated needs (including operating expenses, debt service, acquisitions, reserves and mandatory distributions, if any). All distributions will be made to the Members in accordance with each Member's Sharing Ratio. . . .

* * *

6.3. **Meetings.** An annual meeting of Members for the transaction of business as may properly come before the Meeting will be held at a place, date, and time that the Managers determine. Special meetings of Members for any proper purpose or purposes (including for informational purposes) may be called at any time by the Managers or the holders of at least 10 percent of the Sharing Ratios of all Members. The Company must deliver or mail written notice stating the date, time, place and purpose(s) of any meeting to each Member entitled to vote at the meeting. The notice must be given not less than 10 no more [sic] than 60 days before the meeting date. All meetings of Members will be presided over by a Chairperson, designated by the Managers from amongst themselves. **The annual meeting of members shall be held on the 1ˢᵗ Monday in December of each calendar year.**

* * *

7.1. **Management of Business.** The Company will be managed by persons ("Managers"), with the exact number to be determined from time to time by resolution of the Members. The Managers will be designated by vote of the Members voting in accordance with their Sharing Ratios, at a meeting of Members called for that purpose. The Members will determine the Managers' term, duties, compensation and benefits, if any. The Managers will serve at the will and direction of the Members.

7.2. **General Powers of Managers.** Except as may otherwise be provided in this Operating Agreement, the ordinary and usual decisions concerning the business and affairs of the Company will be made by the Managers. Action of the Managers will be taken by approval of a majority of the Managers then in office . . . . The Managers may not take, or cause the Company to take, any action requiring the approval of the Members under this Operating Agreement, the Articles or applicable law unless the Members have duly approved the action. Subject to the foregoing, each Manager has the power, on

behalf of the Company, to do all things necessary or convenient to carry out the business and affair of the Company[.]

\* \* \*

7.4. **Removal.** Managers may be removed for cause on approval of the Members entitled to vote or consent on the matter owning a majority in interest of the Sharing Ratios. . . .

\* \* \*

10.4. **Entire Agreement.** This Operating Agreement, together with the Company's Articles of Organization, constitutes the entire agreement among the parties and contains all of the understandings between the parties with respect to the subject matter. This Operating Agreement together with the Company's Articles of Organization supersede any and all other prior or contemporaneous agreements, either oral or written, between the parties with respect to this subject matter.

Fisher initially served as Scholastic's chief executive officer and as Scholastic's sole "manager." Noel initially served as the chief operating officer ("COO").

In 2015, Scholastic entered into a management agreement with Chandler Park Academy ("the charter school"), which is a public school academy formed under Part 6a of Article 1 of the Revised School Code, MCL 380.1 *et seq*. For the instant purposes, it suffices to note that under the management agreement, Scholastic agreed to provide certain managerial services for the charter school, including the provision of a school principal employed by Scholastic, in return for certain compensation. The management agreement's effective date was July 1, 2015; and, unless terminated earlier pursuant to the agreement's terms, Scholastic and the charter school decided that the agreement would continue to be in effect until June 30, 2018.

Over the next year, the working relationship between Fisher and Noel deteriorated. On July 6, 2016, Fisher sent Noel correspondence accusing him of engaging in ongoing unprofessional behavior and of demonstrating an unwillingness to change. Fisher informed Noel that she was immediately removing him from his position as COO, that Fisher planned to hire an employee to replace Noel, and that Noel would nonetheless "continue to receive the benefits" of his ownership interest in Scholastic. Curry ultimately replaced Noel as Scholastic's COO.

On March 17, 2017, Noel initiated the first lawsuit by filing a complaint, which he later amended. His first amended complaint set forth nine counts, as follows: (1) breach of the operating agreement against Fisher; (2) negligence against Fisher, Curry, and Bowers; (3) implied, innocent, negligent, or intentional misrepresentation (at the time the operating agreement was executed) against Fisher; (4) silent fraud and bad-faith promises (at the time the operating agreement was executed) against Fisher; (5) implied, innocent, negligent, or intentional misrepresentation (in July 2016 and thereafter) against Fisher, Curry, and Bowers; (6) silent fraud and bad-faith promises (in July 2016 and thereafter) against Fisher, Curry, and Bowers; (7) minority suppression against Fisher; (8) an accounting of Scholastic's finances; and (9) injunctive relief in the form of the appointment of a receiver.

-4-

On September 15, 2017, Noel and his certified public accountant, Harold Montgomery ("Montgomery"), appeared at Scholastic's offices to review Scholastic's financial documents. An affidavit executed by Curry provides the following:

> [Curry] placed Noel and Montgomery in a room with a laptop computer which contained electronic copies of the following Scholastic files accessible for viewing:
>
> (a) Monthly bank statements and reconciliations from January 1, 2016 to June 30, 2016 and from May 1, 2017 to those most currently available.
>
> (b) Cancelled checks dated from January 1, 2016 to those most currently available.
>
> (c) Credit card statements from September 1, 2016 to those most currently available with portions of the credit card account numbers blacked out.
>
> (d) Current electronic copy of QuickBooks data file.[2]
>
> (e) Payroll records of Scholastic employees from January 2013 to present with social security numbers blacked out.

Curry also offered to permit Noel and Montgomery to copy those documents if they would sign a nondisclosure agreement, but Noel and Montgomery declined to do so. After reviewing the provided documentation for approximately an hour, Noel and Montgomery left Scholastic's office.

When Montgomery was deposed on November 8, 2017, he indicated that he had discovered nothing that he considered to be fraudulent, inaccurate, or incomplete in his cumulative review of all of the Scholastic financial documentation, including Scholastic's 2016 federal tax return. However, Montgomery later indicated that, under the "cash" method of accounting that Scholastic utilized, which fundamentally differs from the generally accepted accounting principles (GAAP) method, there were inaccuracies or mistakes in the preparation of two Scholastic balance sheets covering different periods in 2017. More specifically, one balance sheet listed "accounts receivable" and "liabilities," neither of which should have been included on a balance sheet under the "cash" method. The other balance sheet incorrectly labeled capital distributions as "liabilities." Montgomery opined that in order to confirm whether the financial documentation was accurate and proper on the whole, an independent audit utilizing "Generally Accepted Auditing Standards" and GAAP—which Montgomery had not performed—would be necessary.

---

[2] At the April 18, 2018 motion hearing concerning summary disposition, Noel's counsel indicated that Montgomery was unable to competently audit Scholastic's financial records based on the information that had been provided by defendants and that all Montgomery needed was "access to QuickBooks[.]"

Under the trial court's scheduling orders, the cutoff date for discovery was November 14, 2017, and the cutoff date for dispositive motions was January 16, 2018. No motions to compel discovery were ever filed by any of the parties during the first lawsuit. However, Noel moved the trial court to order an accounting and to appoint a receiver. The trial court denied both motions, specifying that the court's denial of the motion to appoint a receiver was without prejudice. Additionally, after the close of discovery, Noel moved the trial court for leave to amend his complaint for a second time. The proposed second amended complaint was almost identical to the first amended complaint, and the proposed second amended complaint did not contain any new claims. According to Noel, filing a second amended complaint was necessary to "conform to the facts and discovery." The trial court ultimately denied Noel's motion for leave to file a second amended complaint.

In January 2018, defendants all filed motions seeking summary disposition in the first lawsuit. While the motions for summary disposition were pending, an April 9, 2018 special meeting of Scholastic's members was held, with Fisher appearing in person with her attorneys, while Noel was represented, by proxy, by his attorney. According to the meeting's minutes, by the unanimous votes of Fisher and Noel (by way of his attorney's proxy), it was resolved that Scholastic would (1) accept Fisher's resignation as a manager "effective immediately"; (2) retain Curry, whom Fisher had already hired, as Scholastic's COO, chief financial officer, and treasurer; (3) appoint Curry as a manager; and (4) direct "the Manager and any officer, or employee of" Scholastic "not to assert any claims against Diane Fisher which [Scholastic] may have with respect to or arising out of the submission, award and negotiation of any educational services contract on behalf of [Scholastic] with [the charter school] effective on and after July 1, 2018." On the other hand, with Fisher's majority vote overriding Noel's contrary votes, it was resolved that (1) Scholastic would acknowledge "receipt of notice from Fisher of her withdrawal as a member . . . effective as of July 1, 2018"; (2) if Noel submitted a proposed bid for submission in response to the charter school's "2018 RFP,"[3] then it would be submitted by Scholastic, and Noel would be free to negotiate any necessary contracts on Scholastic's behalf; (3) both Fisher and Noel, in their "individual capacit[ies] or through an entity controlled by [either of them], and not on behalf of or as agent of" Scholastic, would also "be free to submit a response to the 2018 RFP"; and (4) Scholastic "waive[d] any claim against any Member for bidding in his or her individual capacity in response to the 2018 RFP."

On April 16, 2018, Noel and Scholastic[4] filed the second lawsuit against Fisher that alleged one count of breach of fiduciary duty. Noel and Scholastic alleged that the manner of Fisher's resignation and withdrawal from Scholastic and her plan to compete against Scholastic with regard to the 2018 RFP constituted breach of her fiduciary duties. At a subsequent motion hearing, counsel for Noel and Scholastic admitted that he filed the second action without moving to amend Noel's complaint in the first action to assert the breach of fiduciary duty claims against Fisher.

---

[3] "RFP" is an acronym for "request for proposal."

[4] Noel filed the complaint "as a member on behalf" of Scholastic.

On April 18, 2018 and April 20, 2018, the trial court issued opinions and orders granting summary disposition to defendants Fisher, Curry, and Scholastic with regard to all claims against them in the first action. Noel and Scholastic subsequently amended the complaint in the second action, asserting four counts against Fisher: (1) breach of fiduciary duty, (2) tortious interference with Scholastic's business relationship or expectancy with the charter school, (3) unjust enrichment, and (4) "conversion" of Scholastic's contract with the charter school. In lieu of answering, Fisher moved for summary disposition of all claims under MCR 2.116(C)(7) (claim barred by res judicata) and (C)(8) (failure to state a claim for relief). Among other things, Fisher argued that all of the claims in the second action were barred by res judicata because they could have been asserted in the first action.

On October 31, 2018—approximately one week before the scheduled hearing regarding summary disposition in the second action—Noel and Scholastic filed a motion seeking leave to file a supplemental brief in opposition to Fisher's motion for summary disposition, arguing that this was necessary because Noel and Scholastic had uncovered new factual support for their claims during Fisher's October 29, 2018 deposition. At the ensuing motion hearing, the trial court denied the motion to file a supplemental brief, reasoning that it was unnecessary for the court to consider the factual record—including any new evidence uncovered during Fisher's October 29, 2018 deposition—to decide whether summary disposition was appropriate under MCR 2.116(C)(7) and (C)(8).

Ultimately, the trial court granted Fisher summary disposition on all claims in the second lawsuit, holding that the claims were all barred by res judicata. The trial court further ruled that, as set forth in Noel and Scholastic's amended complaint, all of the claims were derivative in nature and because it was undisputed that Noel had "failed to comply with MCL []450.4510(b)'s written demand requirement," Noel was not entitled to pursue those derivative claims on Scholastic's behalf. Finally, the trial court held that because the court had decided that Fisher was entitled to summary disposition of all claims on two independent grounds, it would not consider or decide the other potential grounds Fisher had asserted to support summary disposition. In response to this ruling, Noel filed a motion for reconsideration, which was denied by the trial court. These appeals followed.

## II. ANALYSIS

### A. DOCKET NO. 343580

#### 1. MOTIONS FOR AN ACCOUNTING AND RECEIVERSHIP

Noel argues that the trial court improperly denied his motion to appoint a receiver to take charge of Scholastic in the first action. This Court reviews a trial court's decision concerning the appointment of a receiver for an abuse of discretion. *Shouneyia v Shouneyia*, 291 Mich App 318, 325; 807 NW2d 48 (2011).

It has long been settled that "[a] court of equity has inherent power to appoint a receiver" and that "[t]he appointment of a receiver is a harsh proceeding and should only be resorted to in extreme cases." *Mich Minerals v Williams*, 306 Mich 515, 525; 11 NW2d 224 (1943). Among other things, "[a] receiver may be appointed where necessary to prevent fraud or to protect

property against imminent danger of loss." *Weathervane Window, Inc v White Lake Constr Co*, 192 Mich App 316, 322; 480 NW2d 337 (1991). "The primary purpose of a receiver is to preserve property and to dispose of it under order of the court." See *id.*

Here, after the trial court's November 2017 ruling denying the requested receivership, Fisher—who was the only member of Scholastic other than Noel—"withdrew from [Scholastic] effective June 30, 2018," leaving Noel as Scholastic's sole member. Hence, pursuant to the terms of the operational agreement, Noel had complete operational control of Scholastic and its assets, and there was no continued need to appoint a receiver to protect Noel's interest in Scholastic from alleged mismanagement or malfeasance. Therefore, even if we were to conclude that the trial court abused its discretion by refusing to appoint a receiver, we would nevertheless be unable to fashion a remedy that would now redress that alleged error. The receivership issue is consequently moot, and we decline to consider it further. See *Garrett v Washington*, 314 Mich App 436, 449-450; 886 NW2d 762 (2016) (observing that "[a]n issue becomes moot when a subsequent event renders it impossible for the appellate court to fashion a remedy" or "this Court's ruling cannot for any reason have a practical legal effect on the existing controversy") (quotation marks and citations omitted); *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues.").

Noel also argues that the trial court erred by denying his motion for an accounting. We are unpersuaded. An action for an accounting is equitable in nature, *Crooker v Crooker*, 340 Mich 250, 251; 65 NW2d 767 (1954), and "we review equitable issues de novo," *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013).

Noel cites MCL 450.4503(5) to support his argument that the trial court improperly denied his request for an accounting.[5] MCL 450.4503(5) provides the following:

---

[5] Noel also cites MCL 600.3605, which is a provision of the Revised Judicature Act that invests circuit courts with power to entertain certain actions, including accountings, against certain *corporate* agents. MCL 600.3605(2) ("This jurisdiction extends over all directors, managers, trustees, and other officers of *corporations*, and over any person who has held any of these offices in any *corporation* against whom proceedings are commenced within 1 year after he has ceased to be a director, manager, trustee, or other officer.") (emphasis added). Because LLCs are governed by the Michigan Limited Liability Company Act, MCL 450.4101 *et seq.*, see *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150-152; 792 NW2d 749 (2010), and Scholastic is an LLC, not a corporation, Noel's reliance on MCL 600.3605 is misplaced. Indeed, Noel has provided no authority indicating that MCL 600.3605 applies to LLCs, we are unaware of any such authority, and it would seem that the Legislature could not have intended such an application. MCL 600.3605 was enacted by 1961 PA 236—more than 30 years before the effective date of the Michigan Limited Liability Company Act, see 1993 PA 23—and MCL 600.3605 has not since been amended. We fail to see how our 1961 Legislature could have intended, when enacting MCL 600.3605, for it to apply to LLCs—a form of business organization that did not yet exist. See Ale, *An Introduction to Limited Liability Companies*, 38

-8-

A member may have a formal accounting of a limited liability company's affairs, as provided in an operating agreement or whenever circumstances render it just and reasonable.

However, in relying on MCL 450.4503(5), Noel conflates an "accounting" with civil discovery when case law makes it clear that they are different. More specifically, case law establishes that "[a]n accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Boyd v Nelson Credit Ctrs, Inc*, 132 Mich App 774, 779; 348 NW2d 25 (1984), citing *Cyril J Burke, Inc v Eddy & Co*, 332 Mich 300, 303; 51 NW2d 238 (1952) (holding that recourse to discovery and the subpoena power was an adequate remedy at law that precluded equitable relief in the form of an accounting).

On appeal, Noel fails to coherently explain why discovery was an insufficient remedy at law in this case, and he cites no authority in support of that proposition. Indeed, the record reveals that Noel ultimately retained Montgomery (a CPA), who reviewed Scholastic's books at the home office. Tellingly, Noel did not file a motion to compel discovery in the trial court. Thus, the record reveals that Noel successfully used discovery to obtain relevant financial documents, and we perceive no error in the trial court's denial of the requested accounting. See *Sys Soft Technologies, LLC*, 301 Mich App at 650.

## 2. MOTION TO AMEND

Noel argues that the trial court improperly denied his motion for leave to file a second amended complaint in the first action. "We review a trial court's decision regarding a plaintiff's motion to amend the pleadings for an abuse of discretion." *Sanders v Perfecting Church*, 303 Mich App 1, 8-9; 840 NW2d 401 (2013).

As explained in *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 696-697; 588 NW2d 715 (1998):

A court should freely grant leave to amend a complaint when justice so requires. The rules governing the amendment of pleadings are intended to facilitate amendment except when prejudice to the opposing party would result. Thus, amendment is generally a matter of right, rather than grace. Ordinarily, a motion to amend a complaint should be granted, and should be denied only for the following particularized reasons: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment. [Citations omitted.]

---

No 8 Prac Law 35 (1992) ("In 1977 Wyoming became the first state to enact a statute authorizing limited liability companies.").

"An amendment is futile if it merely restates the allegations already made or adds allegations that still fail to state a claim." *Id*. at 697.

In this instance, Noel's motion for leave to file a second amended complaint was properly denied because the proposed amendments were futile. A comparison of Noel's first amended complaint to his proposed second amended complaint reveals that they are nearly identical, with each stating nine counts that are titled identically in both pleadings and each purportedly including 139 numbered paragraphs.[6] The few minor substantive changes, which updated the factual allegations to include more recent actions by Fisher and Curry, are immaterial because, for the reasons set forth below, none of them would have been sufficient to save Noel's claims from summary disposition. Thus, the trial court's decision to deny Noel's motion for leave to file a second amended complaint did not fall outside the range of reasonable and principled outcomes. See *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

### 3. SUMMARY DISPOSITION

Noel argues that the trial court erred by granting defendants Fisher, Curry, and Scholastic summary disposition of all claims against them in the first action pursuant to MCR 2.116(C)(8) and (C)(10). We find no error warranting reversal.[7]

This Court reviews a trial court's decision to grant or deny summary disposition de novo. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "[T]he circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "A motion for summary disposition under MCR 2.116(C)(10) shall be granted if there is no genuine issue regarding any material fact and the movant is entitled to judgment as a matter of law." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).

---

[6] The paragraphs in the proposed second amended complaint are incorrectly numbered. Because the proposed second amended complaint includes two paragraphs numbered 84 and two numbered 85, it actually contains 141 numbered paragraphs, along with several others that are not numbered.

[7] We also reject Noel's contention that the trial court erred by failing to consider his supplemental briefing regarding summary disposition. The trial court's opinion and order explicitly states that the court "considered the factual allegations in [Noel's] supplemental brief and conclude[d] that they d[id] not change the outcome" with regard to summary disposition.

In *El-Khalil v Oakwood Healthcare, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157846); slip op at 6, our Supreme Court articulated the standard of review for a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(8):

> A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery.

For purposes of MCR 2.116(C)(8), the "pleadings" include any written instrument on which a claim or defense is based—such as the operating agreement in this case—that is attached to a pleading. See MCR 2.113(C); *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

### a. BREACH OF THE OPERATING AGREEMENT

Noel argues that the trial court erred by granting Fisher summary disposition of the claim against her for breach of the operating agreement. However, Noel's argument on this issue fails to cite to any legal authority, fails to cite any particular section of the operating agreement in support, and (excluding one parenthetical citation to record evidence) consists of only three meager sentences. "An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority." *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). Thus, Noel has abandoned this argument, and we need not consider it. See *id.*

### b. NEGLIGENCE

Noel next argues that the trial court erred by granting defendants Fisher and Curry summary disposition of Noel's claim for negligence. "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff. It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004) (quotation marks and citation omitted). However, "a tort action will not lie when based solely on the nonperformance of a contractual duty." See *id*. at 466. Here, in alleging that Fisher and Curry owed him a legal duty, Noel's amended complaint merely quoted terms that were set forth in the operating agreement. The amended complaint contains no allegations that Fisher and Curry owed Noel a duty outside of the terms of the contract. Thus, because Noel's amended complaint merely alleged the existence and breach of contractual legal duties, he failed to plead a claim of negligence. See *id*. Hence, because Noel's negligence claim was fatally deficient on the face of the pleadings, summary disposition was proper under MCR 2.116(C)(8).

### c. MISREPRESENTATION AND FRAUD

Noel argues that the trial court erred by granting summary disposition on his claim of fraudulent misrepresentation. We disagree.

In *Lucas v Awaad*, 299 Mich App 345, 363; 830 NW2d 141 (2013), this Court outlined the requirements of establishing a claim of fraudulent misrepresentation:

> A plaintiff asserting a claim of fraud must demonstrate these six elements: (1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation.

As a general rule, "an action for fraudulent misrepresentation must be predicated upon a statement relating to a *past* or an *existing* fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976). Under the "bad faith" exception to that general rule, a future promise can represent an actionable misrepresentation if it is "made in bad faith without intention of performance." *Id*. at 337-338. However, "evidence of fraudulent intent, to come within the exception, must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter." *Id*. at 338-339 (quotation marks and citation omitted).

As stated in Noel's amended complaint, all of the claims alleging misrepresentation—including the claims that are captioned as if they regard conduct occurring in July 2016 and thereafter—are premised on representations in the operating agreement. Those representations were clearly *future* promises of a contractual nature.[8] Moreover, as the trial court noted, Noel failed to allege or present evidence demonstrating that when Fisher executed the operating agreement in November 2011, her conduct at that time, or almost immediately afterward, indicated a bad-faith intention not to abide by the agreed-upon terms. On the contrary, it is undisputed that Fisher retained Noel in his position as Scholastic's COO until July 2015—nearly four years after the operating agreement was executed. Indeed, Fisher's earliest alleged breaches of the operating agreement occurred several years after its execution. As a matter of law, such breaches are "too remote in time" to constitute evidence of bad faith on Fisher's behalf at the time she entered the operating agreement. See *Hi-Way Motor Co*, 398 Mich at 338-339 (holding that a letter dated three years after a future promise was made constituted "evidence too remote in time to indicate that when the [defendants'] agents made the promise they had no intention of fulfilling it"). Therefore, under both MCR 2.116(C)(8) and (C)(10), the trial court correctly granted summary disposition to defendants Fisher and Curry on the misrepresentation claims.

---

[8] The representations were also not attributable to defendant Curry, inasmuch as there is no substantively admissible evidence that Curry ever executed the operating agreement or affirmatively represented that he would abide by the agreement's terms.

### d. SILENT FRAUD

With respect to the trial court's dismissal of the silent fraud claim, to prove silent fraud "the plaintiff must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure." *Lucas v Awaad*, 299 Mich App at 363-364. Noel's amended complaint alleges that Fisher had a duty to "maintain complete and accurate books and records of the Company's business and affairs as required by the Act" (emphasis omitted). However, the amended complaint does not identify which "Act" imposed a duty of disclosure on Fisher, and the amended complaint does not contain any other allegations to support that Fisher owed a duty of disclosure to Noel. Consequently, Noel failed to adequately plead a claim of silent fraud, and summary disposition was therefore proper on that claim pursuant to MCR 2.116(C)(8).

### e. "MINORITY SUPPRESSION"

Noel argues that the trial court erred by summarily dismissing his claim for "minority suppression." His argument of this issue in his brief on appeal consists of one sentence, which is devoid of citation to legal authority. Any attempt to meaningfully analyze this claim would require this Court to advocate on Noel's behalf and search for authority that might sustain his position. Because that is not our proper role, we deem this claim of error abandoned, and will not consider it. See *Cheesman*, 311 Mich App at 161.[9]

### B. DOCKET NO. 347056

Noel and Scholastic argue that the trial court erred by granting Fisher summary disposition of all claims in the second action pursuant to MCR 2.116(C)(7). We disagree.

A party is entitled to judgment as a matter of law under MCR 2.116(C)(7) if the opposing party's claims are barred because of res judicata. *Beyer v Verizon North, Inc*, 270 Mich App 424, 435; 715 NW2d 328 (2006). "A party may support a motion under MCR 2.116(C)(7) by affidavits, depositions, admissions, or other documentary evidence." *Maiden v Rozwood*, 461 Mich at 119. "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id.* "If there is no relevant factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Snead v John Carlo, Inc*, 294 Mich App 343, 354; 813 NW2d 294 (2011). "If, however, a pertinent factual dispute exists, summary disposition is not appropriate." *Id.*

---

[9] Noel also abandoned his "minority suppression" claim in the trial court. More specifically, Noel's argument in the trial court was identical to the one-sentence argument he raises on appeal, except that in the trial court he referred to Scholastic as "the Defendant Corporation," while on appeal he uses the phrase "the Appellee Corporation." Like this Court, "[t]rial courts are not the research assistants of the litigants," *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008), and the trial court was under no obligation to seek out authority to support Noel's claim on his behalf.

"The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *In re Bibi Guardianship*, 315 Mich App 323, 333; 890 NW2d 387 (2016) (quotation marks and citation omitted). There are four essential elements for res judicata: (1) the prior action was decided on the merits, (2) the prior decision was final, (3) both actions involve the same parties or their privies, and (4) the claims to be precluded either were or could have been decided in the prior action. *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013).[10]

With regard to the first and second elements, the trial court's grant of summary disposition to all of the defendants in the first action constituted a final decision on the merits. MCR 2.504(B)(3) provides:

> Unless the court otherwise specifies in its order for dismissal, a dismissal under this subrule *or a dismissal not provided for in this rule*, other than a dismissal for lack of jurisdiction or for failure to join a party under MCR 2.205, operates as an adjudication *on the merits*. [Emphasis added.]

In this instance, one of the trial court's opinions and orders granting summary disposition against Noel in the first action explicitly stated: "This order resolves the last pending claim and closes the case." The trial court's other grants of summary disposition to the various defendants were not premised on lack of jurisdiction or failure to join a party under MCR 2.205. Hence, under MCR 2.504(B)(3), the grants of summary disposition qualify as final adjudications on the merits for purposes of res judicata. See *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 419; 733 NW2d 755 (2007) (holding that "[i]n the absence of any language in an order of dismissal limiting the scope of the merits decided, [MCR 2.504(B)(3)] plainly provides that the order operates as an adjudication of the entire merits of a plaintiff's claim" for purposes of res judicata). The first and second elements are therefore satisfied. See *Duncan*, 300 Mich App at 194.

Res judicata's third element is also satisfied because all of the named parties in the second action (i.e., Noel, Scholastic, and Fisher) were also named parties in the first action. Accordingly, the parties' arguments on appeal regarding privity of interest are misplaced and need not be considered by this Court. See *Adair v Michigan*, 470 Mich 105, 121; 680 NW2d 386 (2004) (noting that, for purposes of this element, both actions must involve "the same parties *or* their privies") (emphasis added); see also *Fast Air, Inc v Knight*, 235 Mich App 541, 544; 599

---

[10] By merging the first and second elements stated in *Duncan*, other decisions sometimes list three elements for res judicata. See, e.g., *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999); *Old Kent Bank of Holland v Chaddock, Winter & Alberts*, 197 Mich App 372, 379; 495 NW2d 808 (1992).

NW2d 489 (1999), quoting Black's Law Dictionary (5th ed), ("A 'party' to an action is a person whose name is designated on record as plaintiff or defendant.").[11]

In the end, the dispositive element here is the fourth and final one (i.e., the claims to be precluded were or could have been decided in the prior action). Our Supreme Court "has taken a broad approach" to this element, embracing the "transactional" test, under which res judicata "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich at 121, 124. "[T]he determinative question is whether the claims in the instant case arose as part of the same transaction as did the claims in" the first action. See *id*. at 125. "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in *time, space, origin or motivation*, [and] whether they form a convenient trial unit. . . ." *Id*. (citation omitted).

We conclude that the claims in the second action arose out of the same "transaction" as those in the first. In both actions, all of the claims regard events that occurred during the same general timeframe, and the claims in the second action all regard an essential subject matter that was also at issue in the first action: a dispute concerning the alleged actions and inactions of Fisher in regard to Scholastic. Indeed, Noel and Scholastic admit that the claims in the second action accrued before the first action had concluded and that they nevertheless instituted the second action without ever attempting to amend the complaint in the first action to add the new claims against Fisher. In light of the practical similarities of the claims and the fact that they involved the same parties, they certainly would have formed a convenient trial unit. Thus, we conclude that the fourth element of res judicata is satisfied here. Consequently, Fisher was entitled to judgment as a matter of law on the basis of res judicata. See *Duncan*, 300 Mich App at 194. As such, the trial court did not commit error requiring reversal—as Noel and Scholastic argue on appeal—by refusing to permit Noel and Scholastic to file a proposed supplemental brief regarding summary disposition, which contained no argument or information that was relevant to Fisher's res judicata arguments. See MCR 2.116(I)(1) ("If the pleadings show that a party is entitled to judgment as a matter of law, . . . the court shall render judgment *without delay*.") (emphasis added).

Finally, Noel and Scholastic argue that the trial court abused its discretion by denying their motion for reconsideration of the trial court's order granting summary disposition in the second action. A trial court's decision to grant or deny a motion for reconsideration is reviewed for an abuse of discretion. *Woods v SLB Prop Mgt*, 277 Mich App 622, 629; 750 NW2d 228 (2008). The sole argument regarding res judicata that Noel and Scholastic included in the motion for reconsideration was the misplaced argument about privity which they now raise on appeal. Moreover, because Noel and Scholastic could have raised that argument before the trial court initially ruled on the motion for summary disposition, the trial court did not abuse its

---

[11] Compare 46 Am Jur 2d, Judgments § 560, pp 922-923 ("A party to an action has been defined as a person who is named as a party to the action and subjected to the jurisdiction of the court, that is, is properly served with process or enters his or her appearance.").

discretion by denying the motion for reconsideration.  See *id.* at 630 (holding that a trial court cannot abuse its discretion by denying a motion for reconsideration "resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order") (quotation marks and citation omitted).

Affirmed in both dockets.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Thomas C. Cameron