*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAN IV PACKARD SQUARE LLC,

      Plaintiff-Appellant,

v

CRAIG SCHUBINER,

      Defendant-Appellee,

and

BCL PROPERTIES LIMITED PARTNERSHIP and 305 ASSOCIATES, LLC,

      Intervening Defendants-Appellees.

UNPUBLISHED
March 21, 2024

No. 365820
Oakland Circuit Court
LC No. 2018-167408-CB

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Plaintiff, Can IV Packard Square LLC, appeals as of right the trial court's order denying plaintiff's motion for proceedings supplementary to judgment. We vacate the trial court's order and remand.

## I. FACTS

This case is part of lengthy litigation between plaintiff and defendant, Craig Schubiner, the principal of Packard Square, LLC. The trial court's April 3, 2023 order, which plaintiff now appeals, was entered by the trial court upon remand by this Court in *Can IV Packard Square, LLC v Schubiner*, unpublished per curiam opinion of the Court of Appeals, issued April 29, 2021 (Docket Nos. 352510, 354185, 354821, 354186) (*Schubiner I*). In *Schubiner I*, this Court summarized the background facts as follows, in relevant part:

>     This case arises out of a nearly $54 million loan that plaintiff made to defendant's company, Packard Square, LLC ("Packard Square"), in October 2014 to finance the construction of a luxury retail and residential development project in

-1-

Ann Arbor, Michigan. As Packard Square's principal, defendant signed a guaranty contract as security for the construction loan. After multiple construction delays, plaintiff sued Packard Square in Washtenaw Circuit Court in October 2016 . . . ; plaintiff requested the appointment of a receiver to manage the construction project and sought foreclosure on the mortgage that Packard Square had granted to plaintiff to secure the loan. . . .

* * *

Plaintiff eventually moved for summary disposition on its foreclosure both on Packard Square's mortgage and on a higher priority mortgage securing an additional loan that plaintiff had made to the receiver to complete construction. See *Can IV Packard Square, LLC v Packard Square, LLC*, 328 Mich App 656, 658; 939 NW2d 454 (2019). In September 2018, the trial court granted summary disposition to plaintiff on its foreclosure claim. . . .

On February 15, 2019, the Washtenaw Circuit Court entered an order granting summary disposition to plaintiff regarding counterclaims that Packard Square had asserted against plaintiff in the Washtenaw case.

* * *

On July 30, 2018, plaintiff filed the present action against defendant for breach of the guaranty contract. Plaintiff alleged that, under the terms of the guaranty contract, defendant had agreed to be liable for the full amount of plaintiff's loan to Packard Square upon the occurrence of certain recourse triggers. Among those recourse triggers were the filing by Packard Square or defendant of voluntary bankruptcy proceedings and opposition by Packard Square or defendant to a motion of plaintiff for relief from the automatic bankruptcy stay. Plaintiff asserted that, through bankruptcy filings made by defendant on behalf of Packard Square, defendant breached the guaranty contract and triggered the recourse provisions of the guaranty contract. Those actions made defendant liable to plaintiff for the full amount of the loan, including all principal, interest, advances, fees, and charges.

* * *

The parties filed competing motions for summary disposition pursuant to MCR 2.116(C)(10) regarding both plaintiff's breach of contract claim and defendant's counterclaims. On December 11, 2019, the trial court issued an opinion and order granting summary disposition to plaintiff on both its breach of contract claim and defendant's counterclaims. On December 17, 2019, the trial court entered a judgment for plaintiff against defendant in the amount of $13,992,936.05, along with attorney fees, consultant fees, continuing interest, and costs.

Extensive postjudgment litigation ensued regarding plaintiff's collection efforts against defendant and entities associated with defendant. On January 16, 2020, the trial court entered an order enjoining defendant from transferring assets outside of the normal course of business pending the satisfaction of the judgment.

On March 6, 2020, proposed intervenors, BCL and 305, filed trial court motions to intervene, quash garnishments, set aside judgment liens, and vacate orders to seize property. According to proposed intervenors, plaintiff had improperly attempted to execute the December 17, 2019 judgment in this case against multiple properties that are each owned by either BCL or 305 which are located in Birmingham, Michigan, or Ann Arbor, Michigan. 305 was owned by a number of trusts of which defendant and members of his family were beneficiaries. BCL was owned by defendant as a general partner and a limited partner named Richard Rogel. . . .

* * *

With respect to each of the properties at issue, defendant had historically transferred the property in and out of his name. By way of example, defendant held the two properties located in Birmingham, 201 Linden and 200 Aspen, in his name up until January 20, 2020, but transferred them to 305, of which defendant was a member, the resident agent, and the manager, for the consideration of $1. As of the date of the trial court denial of the motion to quash, the Ann Arbor property, 702 Tappen, was titled in the defendant's name.

The trial court determined that the resolution of the question of who was the rightful owner of the subject properties required an evidentiary hearing and, due to the Covid-19 pandemic, scheduled an evidentiary hearing for May 14, 2020. That date was later adjourned to June 25, 2020. All collection efforts regarding the properties at issue were stayed pending the evidentiary hearing.

In its collection efforts, plaintiff had issued subpoenas to four of 305's past and current lenders, seeking financial information about proposed intervenors and related entities not involved in this case. . . . Defendant and proposed intervenors asked the trial court to quash the subpoenas and to enter a protective order to protect the confidential and proprietary financial information of proposed intervenors and their related entities and to prevent plaintiff from obtaining discovery from third-party lenders.

On June 15, 2020, plaintiff filed a motion for proceedings supplementary to judgment. Plaintiff argued that defendant's transfer of the Aspen property to 305 on January 20, 2020, was fraudulent, a violation of the January 16, 2020 order enjoining the transfer of defendant's assets, and a voidable transaction under the Uniform Voidable Transactions Act (UVTA), MCL 566.31 *et seq*. As a consequence, plaintiff asked that the trial court enter an order to void the fraudulent transfer. Specifically, plaintiff asked the court to do the following:

(1) Set aside the January 20, 2020 transfer of the Aspen and Linden properties to 305 or order 305 to show cause why the conveyance should not be set aside;

(2) Quiet title to the Aspen and Linden properties in plaintiff's name;

-3-

(3) Order defendant to provide an accounting of all proceeds of a mortgage that defendant took on the Aspen property in January 2020 and turn the proceeds over to plaintiff to the extent necessary to satisfy the judgment; and

(4) Enjoin defendant and 305 from transferring or disposing of assets pending satisfaction of the judgment.

\* \* \*

On June 23, 2020, the trial court entered an order denying the motion to quash subpoenas, finding that they were another attempt by defendant to delay proceedings and avoid his obligation under the judgment. The court further found that the motion was made "without basis in law or fact" and sanctioned both defendant and his attorney in the amount of $1,000. The motion to allow proceedings supplemental to judgment was granted. [*Schubiner I*, unpub op at 4-6.]

Defendant, 305, and BCL appealed in four cases that were consolidated by this Court in *Schubiner I*. Relevant here, defendant challenged in Docket No. 354185 the June 23, 2020 order of the trial court granting plaintiff's motion for proceedings supplementary to judgment. *Id*. at 1-2. This Court affirmed the trial court's December 17, 2019 judgment in favor of plaintiff and against defendant for breach of the guaranty, vacated the trial court's June 23, 2020 order that granted plaintiff's motion to allow proceedings supplementary to judgment, and remanded to the trial court for further proceedings. *Id*. at 15, 21. This Court reasoned:

Defendant and 305 contend that there were factual questions for which the trial court failed to make fact-findings with respect to plaintiff's request for relief under the UVTA due to defendant's alleged transfers of properties to 305. We agree with defendant and 305 that the trial court's June 23, 2020 order did not include any factual findings. Further, the trial court failed to explain why it reversed its earlier ruling that an evidentiary hearing was required.

Initially, it must be noted that the trial court's June 23, 2020 order failed to specify exactly what relief was granted to plaintiff. The order stated that plaintiff's motion for proceedings supplementary to judgment was granted. The order did not specify the particular nature of the relief being granted, i.e., whether each item of relief requested in the motion was granted. This omission is significant given the broad nature of the relief requested with respect to the properties at issue. The trial court's order did not specify whether it was granting all [or] part of the broad relief requested. This omission alone warrants a remand to the trial court for clarification. The trial court did not make the fact-findings required by MCL 566.35(1), a provision of the UVTA, [which] provides,

A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in

-4-

> exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> To set aside the transfer under MCL 566.35(1), a creditor must show that "(1) the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive reasonably equivalent value in exchange for the transfer." *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014) (quotation marks and citation omitted). The moving party has the burden of proof by a preponderance of the evidence. MCL 566.35(3). [*Schubiner I*, unpub op at 15-16.]

On remand, the trial court granted BCL's and 305's motion to intervene in the proceedings. The trial court thereafter held an evidentiary hearing, during which defendant testified that he created 305 to hold title to the Aspen and Linden properties for purposes of estate planning. On January 27, 1998, Ralph T. Stoneish, trustee of the Rudolph T. Stoneish Trust Agreement, conveyed the Aspen property to defendant and 305 as joint tenants with full rights of survivorship. Defendant testified that thereafter he borrowed money in his own name to finance the construction of a home on the property. He lived in the home after it was constructed and continued to live in the home as a tenant after he transferred title to the Aspen property to 305 in 2006 or 2007.

Defendant testified that he is the manager of 305, and that the owners of 305 are three irrevocable trusts. The beneficiaries of the trusts are defendant, his mother, his daughter, his two brothers, and his brother's two children. Defendant estimated that the Aspen home is valued at two million dollars. He testified that 305 did not pay him for the property, and acknowledged that he previously testified that one of the reasons he created 305 was to keep the assets from creditors, although there were no creditors at the time of 305's creation.

Defendant testified that in 2019, he determined that he needed to refinance both properties on behalf of 305 to obtain a better interest rate. He testified that because all prospective lenders required the property to be owned by him rather than the LLC, he deeded the properties from 305 to himself to obtain financing, and thereafter deeded the property back to 305. Specifically, on January 16, 2020, defendant executed a quitclaim deed conveying both the Aspen and Linden properties from 305 to himself. On the same day, defendant executed a mortgage on the Aspen home for $1.5 million, signing the mortgage note in his own name. The $1.5 million was used to pay existing debt on the Aspen and Linden properties; the proceeds of the loan were distributed at the closing to pay off the existing $1,088,000 loan on the Aspen house and pay off the existing $404,000 loan on the Linden property. 305 paid the closing costs of $17,851.16. Defendant testified that he received no proceeds from the refinancing. On January 20, 2020, defendant executed a quitclaim deed on both properties from himself back to 305.

With respect to his assets, defendant testified that on January 20, 2020, he owned a 92% interest in an LLC called 1900 Associates that provides him with approximately $4 million in equity, a 50% interest in the Ann Arbor property worth approximately $300,000-$400,000, and an interest in an LLC in Colorado worth approximately $300,000. Defendant testified that he used none of his assets to acquire either of the properties on January 16, 2020 or when he transferred

the properties back to 305 on January 20, 2020, and that the transactions had no impact on his net worth.

Defendant testified that his total personal debt in January 2020 was approximately $600,000. He acknowledged that he incurred debt of $1.5 million to refinance the previous debt on the Aspen and Linden properties in January 2020. He also acknowledged that as a result of the transaction, he personally owes the lender $1.5 million and 305 enjoyed the benefit of him paying off the loans previously existing on the properties. Defendant testified that he was also responsible for the prior loans on the properties, however, as he signed the loans as a guarantor. He did not assign the current note owed to 305.

Following the evidentiary hearing, the trial court issued its order and opinion denying plaintiff's motion for proceedings supplementary to judgment. The trial court determined that plaintiff failed to demonstrate that it was entitled under the UVTA to set aside defendant's transfer of the properties to 305. The trial court found that defendant made the transfers solely to obtain favorable interest rates on existing loans in the ordinary course of business, and that plaintiff did not demonstrate that defendant was insolvent or became insolvent as a result of the transfers, nor that defendant did not receive reasonably equivalent value in exchange for the transfer. Plaintiff now appeals, challenging the trial court's April 3, 2023 order.

## II. DISCUSSION

Plaintiff contends that the trial court erred by denying its motion for proceedings supplementary to judgment. We conclude that the trial court erred by failing to apply the proper analysis when denying plaintiff's motion.

We review a trial court's decision in a post-judgment collection action for an abuse of discretion. See *System Soft Tech, LLC v Artemis Tech, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013). The trial court abuses its discretion when its decision is outside the range of principled outcomes, *Farm Bureau Ins Co v TNT Equip, Inc*, 328 Mich App 667, 672; 939 NW2d 738 (2019), or when the trial court makes an error of law, *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016). We review de novo the trial court's interpretation of statutes and court rules, *Home-Owners Ins Co v Andriacchi*, 320 Mich App 52, 71; 903 NW2d 197 (2017), as well as the trial court's conclusions of law, *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 195; 761 NW2d 293 (2008). We review the trial court's factual findings for clear error, and review the application of the law to the facts de novo. *Hannay v Dep't of Trnsp*, 497 Mich 45, 57-58; 860 NW2d (2014).

Under Michigan law, a party to a civil action is permitted to pursue post-judgment supplementary proceedings to collect a money judgment. MCL 600.6101 *et seq.*; MCR 2.621(A)(2). In this case, plaintiff moved for post-judgment supplementary proceedings seeking to set aside defendant's conveyances of property to intervening defendant 305 under Michigan's Uniform Voidable Transactions Act (UVTA), MCL 566.31 *et seq.* The UVTA[1] was "designed to

---

[1] Formerly known as the Uniform Fraudulent Transfer Act. MCL 566.45(1).

prevent debtors from transferring their property in bad faith before creditors can reach it." *Dillard v Schlussel*, 308 Mich App 429, 446; 865 NW2d 648 (2014).

The UVTA provides for a creditor to recover with regard to two types of fraudulent transfers, the first occurring when the debtor actually intended to defraud a creditor and the second occurring when the debtor engages in certain transactions that are deemed fraudulent regardless of whether the creditor can prove the debtor's actual intent. MCL 566.34 addresses the first type of fraudulent transfer and permits recovery where a debtor makes a transfer or incurs an obligation, regardless of whether the transaction occurred before or after the creditor's claim occurred, if the debtor actually intended to hinder, delay or defraud any of the debtor's creditors or if the debtor "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." MCL 566.34(1)(b).

The second type of fraudulent transfer, commonly called "constructive fraud" or "fraud in law," is addressed in §5 of the UVTA, MCL 566.35, which provides in relevant part:

 (1) A transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

\*\*\*

(3) Except as provided in subsection (4) and subject to [MCL566.32] a creditor that makes a claim for relief under subsection (1) or (2) has the burden of proving the elements of the claim for relief by a preponderance of the evidence.

MCL 566.35 thus pertains to "constructive fraud" because it "deems certain transactions fraudulent regardless of the creditor's ability to prove the debtor's actual intent." *Dillard*, 308 Mich App at 446. A creditor seeking relief under MCL 566.35 must prove that (1) the creditor's claim arose before the transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer, and (3) the debtor did not receive reasonably equivalent value in exchange for the transfer. Plaintiff thus was required in this case to prove the three elements by a preponderance of the evidence to demonstrate that defendant's property transfers to 305, or obligations incurred as a result of the transfers, were voidable under MCL 566.35. *Dillard*, 308 Mich App at 446-447.

The parties do not dispute that plaintiff demonstrated the first element, that its claim arose before the transfer. The trial court found, and the record demonstrates, that plaintiff obtained a judgment against defendant on December 17, 2019, for approximately $14 million. Defendant testified that on January 16, 2020, he transferred the property from 305 to himself, then incurred the debt of $1.5 million, used the money to eliminate the existing debt owed on the property, then transferred the property from himself back to 305 on January 20, 2020.

The trial court determined, however, that plaintiff did not establish the second or third elements. The trial court made the following factual findings:[2]

- The Defendant is the manager of 305, a Delaware limited liability company formed in 2006. 305's members are three irrevocable trusts . . . , the beneficiaries of which are the Defendant and various family members. The trusts were established in 2007 and 2009 for estate planning and similar purposes. The Defendant has never personally owned a membership interest in 305.

- 305 holds legal title for two Birmingham, Michigan properties – 200 Aspen Road and 201 Linden Road. The defendant lives in a home located at 200 Aspen. 201 Linden is a vacant lot directly behind 200 Aspen.

- From March 29, 2007 until March 2014, the Defendant and 305 jointly owned 200 Aspen. In March 2014, the Defendant conveyed to 305 all of his interest in 200 Aspen. On March 14, 2014, 305 executed a mortgage as borrower in the amount of $1.2 million in favor of BOFI Federal Bank, which was secured by 200 Aspen.

- On April 21, 2009, 305 purchased 201 Linden by land contract. The deed was recorded on March 30, 2018 upon satisfaction of the land contract.

- On March 13, 2018, 305 obtained a loan secured by 201 Linden from Nations Home Loan Corporation.

- The instant lawsuit was filed on July 30, 2018.

- The judgment in this case was entered against the Defendant on December 17, 2019.

- At the time the judgment was entered, 305 had two loans totaling over $1.5 million which were secured by 201 Linden and 200 Aspen.

- In late 2019 and early 2020, to take advantage of lower interest rates, 305 sought to refinance the loans. 305's real estate broker, Kathy Belcher, pursued five lending institutions, all of which declined refinancing at that time because the properties' titles were held by a limited liability company. In early January 2020, the Defendant was advised by Belcher . . . that the only way to proceed to obtain the refinancing was for 305 to transfer the properties to the Defendant

---

[2] The trial court stated that it made these findings by clear and convincing evidence. It is unclear whether the trial court applied the proper, and less-demanding, standard of a preponderance of the evidence when determining whether plaintiff had met its burden of proof. See *Griffin v Griffin*, 323 Mich App 110, 123 n 8; 916 NW2d 292 (2018) (discussing the difference between the two standards).

for $1, refinance the properties in the Defendant's personal name, and then the Defendant could retransfer the titles back to 305 for $1. The Defendant agreed that this was an appropriate plan and proceeded accordingly.

- On January 16, 2020, this Court's predecessor ordered: "the Court will enjoin Defendant from transferring assets outside of the normal course of business pending satisfaction of the final judgment."

- On January 16, 2020, 305 deeded 200 Aspen to the Defendant for $1. The Defendant executed a mortgage of $1.5 million in favor of Deephaven Mortgage secured by 200 Aspen at a lower rate than 305 was paying previously. 305 also tendered $17,851.16 in cash at the closing to cover the shortfall for the closing of the new mortgage. The refinancing proceeds were used to pay off the old mortgage, closing costs, and related expenses.

- The Defendant did not personally receive any of the proceeds from the refinance of 200 Aspen.

- On January 20, 2020, the Defendant deeded 201 Linden to 305 for $1.

- The loan on 201 Linden was due on February 27, 2020. This loan was significantly less than the over million-dollar loan secured by 201 Linden. 305 was able to obtain refinancing without having to have the Defendant sign the mortgage, and 305 obtained a $340,000 mortgage loan on 201 Linden.

- The refinancing proceeds of 201 Linden were used to pay off the old mortgage, closing costs, and related expenses.

- The Defendant did not personally receive any of the proceeds from the refinance of 201 Linden.

- Based on his membership in various limited liability companies, at the time of the entry of the judgment and the refinancings, the Defendant's net worth was approximately $4.5 million. Immediately after each of the refinancings, his net worth was approximately the same.

The trial court thus found that "at the time the judgment was entered, *305* had two loans totaling over $1.5 million. . ."[3] (emphasis added). The trial court then concluded, in pertinent part:

---

[3] The trial court found that 305 "had" the debt before the transactions, and defendant then executed a mortgage on the properties to obtain $1.5 million that he used to pay 305's existing debt. Defendant contends that he also was obligated on the mortgage debt before the refinancings, but the record is unclear. With respect to 201 Linden, mortgage documentation from 2018 suggests that defendant and 305 at one time were joint mortgagors. With respect to the Aspen property, the

1. The creditor's claim arose before transfer: Based on the Findings of Fact, the Defendant's transfer of 201 Linden and 200 Aspen occurred after the judgment was entered. The predecessor Court's order enjoining any transfer was also entered before the Defendant transferred those properties back to 305.

2. The Plaintiff has failed to show that the Defendant was or became insolvent because of the transfer: As shown in the Findings of Fact, the Defendant's net worth was approximately $4.5 million – obviously he was not insolvent. The refinancings did not make him so.

3. The debtor received reasonably equivalent value in exchange for the transfer: Before the judgment was entered, 305 owned 200 Aspen and 201 Linden. The intervening transfer of ownership from 305 to the Defendant and back to 305 was done for $1 in each transaction. $1 = $1. As such, there was an exactly equivalent value.

The record suggests that the trial court's findings that defendant's net worth was $4.5 million, and that the refinancing did not affect defendant's net worth, are clearly erroneous. The trial court found that the $1.5 million in debt belonged to 305 before the transactions, and found that as a result of the transactions the debt was shifted to defendant. The trial court did not account for that debt being shifted from 305 to defendant when determining defendant's net worth.

In addition, the trial court's conclusions that plaintiff did not demonstrate the second and third elements under MCL 566.35 reflect an incorrect application of the law. The second element plaintiff was required to demonstrate under MCL 566.35 was that defendant was insolvent or became insolvent as a result of the transfer. Section 2 of the act, MCL 566.32(1), provides that a debtor "is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets." A "debt" is defined by the UVTA as "liability on a claim," MCL 566.31(e), but does not include "an obligation to the extent it is secured by a valid lien on property of the debtor not included as an asset," MCL 566.32(3)(b). An "asset" is defined by the UVTA as "property of a debtor," MCL 566.31(b), but does not include property to the extent it is encumbered by a valid lien, MCL 566.31(b)(*i*), nor does it include "property that has been transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this act," MCL 566.32(3)(a). "Valid lien" is defined by the UVTA as "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." MCL 566.31(t).

The trial court in this case concluded that plaintiff had not met the burden of demonstrating insolvency. The trial court held that "at the time of the entry of the judgment and refinancing, the Defendant's net worth was approximately $4.5 million. Immediately after each of the refinancings, his net worth was approximately the same." However, the trial court also found that defendant incurred mortgage debt of $1.5 million as a result of refinancing the properties. The trial court found that on January 16, 2020, defendant executed a mortgage of $1.5 million in favor

---

record indicates that before the 2020 transfer, 305 was the sole mortgagor on the property securing a loan in the amount of $1.2 million.

of Deephaven Mortgage, paid off the old mortgage held by 305 on 200 Aspen, did not personally receive any proceeds from the refinance of 200 Aspen, then transferred 200 Aspen to 305, while retaining the obligation to pay the new mortgage of $1.5 million. Similarly, the trial court found that defendant used part of the funds to discharge existing debt on 201 Linden, did not personally receive the funds, then transferred 201 Linden back to 305. The trial court's calculation does not appear to consider defendant's debt, however, and therefore is not an accurate analysis of whether defendant was insolvent under the UVTA.

In addition, plaintiff asserts that the judgment of $14 million constitutes a "debt" under MCL 566.31(e), and that defendant therefore was insolvent at the time of the property transfers. Defendant argues that the judgment was not yet a liability on a claim under the UVTA at the time of the transfers because it was not yet enforceable under the court rules. The trial court, however, did not make a finding regarding the amount of defendant's debts, nor consider those debts when determining whether defendant was insolvent under the UVTA. Because the trial court did not ascertain and consider defendant's debts when determining whether defendant was insolvent, the trial court erred.

The third element plaintiff was required to prove was that defendant did not receive "reasonably equivalent value in exchange for the transfer." "Reasonably equivalent value" is a commercial concept, the touchstone of which "is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the realizable commercial value of the assets transferred." *Dillard*, 308 Mich App at 459. The UVTA discusses value in MCL 566.33:

> (1) Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied. Value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

> (2) For the purposes of [MCL 566.34] and [MCL 566.35], a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.

> (3) A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

In this case, the trial court concluded that defendant received reasonably equivalent value in exchange for the transfer because "[b]efore the judgment was entered, 305 owned 200 Aspen and 201 Linden. The intervening transfer of ownership from 305 to the Defendant and back to 305 was done for $1 in each transaction. $1 = $1. As such, there was an exactly equivalent value." However, as discussed, the trial court found that before the transactions 305 owed $1.5 million in debt on the properties, and that as a result of the transactions, the obligation to pay the $1.5 million shifted from 305 to defendant with defendant receiving no equivalent value in exchange for defendant acquiring this obligation. The trial court therefore erred in its analysis of whether

defendant received reasonably equivalent value in exchange for the transfer. See MCL 566.33. The purpose of the UVTA is to prevent debtors from transferring their assets in bad faith before creditors can reach them. *Dillard*, 308 Mich App at 446. Here, the trial court denied relief to plaintiff without properly considering the statutory factors for constructive fraud.

Plaintiff also contends that the trial court erred by concluding that plaintiff failed to establish that defendant violated the trial court's January 20, 2020 order enjoining defendant from transferring property. Because the question whether defendant violated the trial court's January 16, 2020 injunctive order was not within the scope of the remand to the trial court, this issue is not properly before this Court on appeal.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray