PER CURIAM.
Defendants, Detroit City Clerk Janice Winfrey and the Detroit Election Commission, appeal as of right the order directing plaintiff to be placed on the August 6, 2013 primary election ballot as a candidate for the office of Detroit City Clerk. We affirm.
I. FACTUAL BACKGROUND AND PROCEEDINGS
On May 1, 2013, plaintiff filed nominating petitions for the office of Detroit City Clerk. Section 3-109 of the Detroit City Charter provides in part that the petition for a candidate who is seeking nomination to the office of city clerk “shall be signed by not less than five hundred (500) signatures of qualified voters of the City *623 of Detroit and not more than . . . one thousand (1,000) signatures of qualified voters of the City of Detroit.”[1] According to defendants, plaintiffs nominating petitions contained 561 signatures. After investigating the petitions, the city’s department of elections determined that 58 signatures were invalid, which left 503 valid signatures.
On May 7, 2013, Daniel Baxter, the Detroit Director of Elections, sent plaintiff a letter stating that it had been determined that she had submitted “sufficient signatures” to qualify to have her name appear on the ballot for the primary election of August 6, 2013. This letter did not state, nor explain, that the city clerk and the department of elections had made a finding that 58 petition signatures were invalid.
Following the May 14, 2013, filing deadline for nominating petitions, a challenge to plaintiffs petition was filed with the department of elections. On May 22, 2013, Baxter sent a letter to plaintiff advising her of the challenge, in particular to the circulator’s oath on pages six and seven of the petitions. The circulator, Thomas Barrow, signed and dated these pages with the date of November 7, 2013. Baxter cited MCL 168.544c, which governs nominating petitions and provides in relevant part:
(4) The circulator of a petition shall sign and date the certificate of circulator before the petition is filed. A circulator shall not obtain electors’ signatures after the circulator has signed and dated the certificate of circulator. A filing official shall not count electors’ signatures that were obtained after the date the circulator signed the certificate or that are contained in a petition that the circulator did not sign and date.
*624 Baxter’s letter further explained that the erroneous date on the two challenged pages invalidated the signatures on those pages for the reason that, the date of “November 7, 2013 has not occurred, it is considered an invalid entry and renders the certificate incomplete.” Baxter’s letter thus informed plaintiff that her candidacy would not be certified, that her name would be excluded from the August 6, 2013 primary ballot, and, significantly, constituted the first notice to plaintiff that, in addition to the invalidation of the two at-issue signature pages, the clerk had also invalidated 58 other signatures, reducing plaintiff’s total number of valid signatures from 503 to 475, 25 fewer signatures than required by the city charter.
According to defendants, the following day, on May 23, 2013, the Detroit Election Commission held a meeting for the purpose of certifying the names of all candidates for the August 6, 2013, primary election ballot. The commission did not certify plaintiff as a candidate for Detroit City Clerk.
Plaintiff filed two requests with the Michigan Bureau of Elections, dated May 25, 2013 and May 27, 2013, seeking a review by the Secretary of State of defendant’s determination to exclude her from the ballot on the basis that she had insufficient signatures to qualify for certification to the August 6, 2013 primary ballot. These letters specifically referred to defendant’s determination that the erroneous circulator’s oath on two signature pages invalidated the petition signatures on those pages. On May 30, 2013, the Michigan Director of Elections, Christopher Thomas, sent plaintiff a letter advising that her appeal was denied because the Secretary of State agreed with the clerk that the circulator’s failure to record the actual date of his signature was a *625 fatal defect, which rendered all the signatures appearing on those petition sheets invalid.
Contemporaneous with plaintiffs appeal to the Secretary of State, plaintiff also sent a letter dated May 28, 2013, to the Detroit City Clerk stating that she and her “Team” had spent three business days in the clerk’s office and had documented the names of more than 55 voters that were “invalidated” for a variety of reasons. In this letter, plaintiff listed voter names from the nominating petitions, the clerk’s disqualification assessment of each name, and the challenger’s assessment of why the signature was valid. Plaintiff demanded that the clerk “provide the procedure of a full and fair review of this contested assessment.” Plaintiff also stated that she was copying Secretary of State Ruth Johnson and was requesting that Johnson “provide the timeframe for her review and assessment.”
It is not entirely clear from the record if the clerk responded to this letter. The record shows that Baxter sent a letter to plaintiff dated May 24,2013, stating that the city department of elections was in receipt of her “grievance” and “was unable to comply with [her] request.” Baxter also stated that MCL 168.552(6) offered her “the most direct route to seek remedy for your concern.” Given that plaintiffs letter was dated May 28, 2013, we cannot determine whether Baxter’s letter was in response to an oral request made by plaintiff before she wrote the May 28, 2013 letter, or if Baxter misdated the letter and was responding to plaintiffs May 28, 2013 letter requesting review of the signature invalidation.
On June 3, 2013, the Michigan Bureau of Elections sent plaintiff a letter responding to her letter dated May 28, 2013 and advising that her request to reinstate the signatures was denied as untimely:
*626 In view of the fact that you received notice of your disqualification from the Detroit City Clerk’s office on May 23, 2013, the deadline to file an appeal with the Secretary of State elapsed on May 28, 2013 at 4:00 p.m. Your fax sent to this office on May 30,2013 is untimely and the Secretary of State is not authorized to act on a belatedly filed appeal. Therefore, your request that the Secretary of State reinstate the signatures of 55 voters determined invalid by the Detroit City Clerk is denied.
The letter further cited MCL 168.552(6) and (7), claiming that the statute required that an appeal concerning a candidate’s disqualification must be filed with the Secretary of State within three (3) days after the official declaration by the city clerk, unless the third days falls on a Saturday, Sunday, or legal holiday, in which case the request may be filed not later than 4:00 p.m. on the next day that is not a Saturday, Sunday, or legal holiday.
Two days later, on June 5, 2013, plaintiff filed a complaint for mandamus, superintending control, preliminary injunction and other relief in the circuit court. In relevant part, plaintiff alleged that she had filed her nominating petitions for the position of city clerk with the required number of signatures, that on being advised that she would not be placed on the ballot for the primary election she had made an inquiry in an effort to challenge the election commission’s decision to exclude her from the ballot, that her challenge to the election commission’s decision was rejected, and that her sole remedy was to seek superintending control of the election commission and a writ of mandamus against the city clerk. Plaintiff further claimed that the circu-lator’s error on the certificate was “a simple technical deficiency” and was not “error enough” to justify invalidating the petitions.
On June 6, 2013, the circuit court entered a temporary restraining order and order to show cause. In *627 relevant part, the order directed the election commission to restore plaintiff to the primary ballot as a candidate for city clerk and further ordered the commission to show cause on June 20, 2013, why a preliminary injunction should not be ordered.
On June 12, 2013, plaintiff filed an amended complaint, adding additional allegations. Defendants filed responses to the complaints, claiming that a writ of mandamus could not issue because plaintiff failed to plead that they did not perform a clear legal duty, and that an injunction could not issue because plaintiff failed to meet her burden for such extraordinary relief.
On June 20, 2013, the parties appeared in the circuit court for the first of four hearings conducted by the assigned judge.[2] After hearing some argument from the parties, the circuit court agreed that the petitions circulated by Thomas Barrow and dated November 7, 2013, were invalid and could not be counted toward the required minimum of 500 signatures because these pages did not strictly comply with MCL 168.544c. Plaintiff argued that she should have been permitted to amend her pleadings to allege that the city clerk had improperly denied her a determination regarding 27 signatures that had been invalidated for reasons other than the invalidated circulator certificate, and that the clerk had improperly required her to appeal first to the Secretary of State without having received that determination. Defendants’ attorney objected on the basis that the ballot needed to be sent to the printer and the clerk was required to mail absentee ballots in two days, *628 on June 22, 2013. The circuit court granted plaintiffs request to amend her pleading on her counsel’s promise to file the amended pleading the next morning. On June 21, 2013, plaintiff filed a third amended complaint, adding a count for a declaratory judgment with respect to the validity of the 27 signatures.
After the initial hearing and at the circuit court’s direction, the parties engaged in a collaborative review of the signatures. The circuit court conducted its additional hearings over the course of three days, during which the parties reported their progress. Although defendants asserted that plaintiff was not entitled to relief as a matter of law, they did not object to the circuit court’s decision to proceed in this manner. Nor did defendants request an order from the circuit court regarding this procedure to allow them to file an application for leave to appeal in this Court. Rather, defendants worked together with plaintiff, as the court encouraged, to reach an agreement that plaintiff had filed 494 valid petition signatures, making it necessary for the circuit court to resolve the validity of at least six signatures for plaintiff to be certified for placement on the ballot.
As to three signatures, defendant argued that the signatures were invalid because no date of signing appeared next to those signatures. The circuit court ruled that MCL 168.544c does not mandate that a person date his or her signature, and the date used by the circulator may be used as the applicable date to determine whether the person was a registered voter. This ruling raised the total number of valid signatures to 497 on the nominating petitions.[3] The circuit court also compared certain additional signatures from the *629 petitions with signatures on the voter cards, and overturned the invalidation of four more signatures. The circuit court then declared “the candidate is on the ballot,” but failed to articulate the particular basis from plaintiffs complaint (i.e., mandamus, superintending control, declaratory judgment) on which it relied to make this declaration. The basis is also not identified in the order entered by the court.
II. PRELIMINARY MATTER
At the outset, we are compelled to point out that at the time defendants filed their claim of appeal with this Court on July 2,2013, defendants stated in their motion for immediate consideration of the motion for peremptory reversal that they “will begin the process of printing the ballots soon to ensure that the absentee ballots and election ballots are mailed out in a timely manner . . . .” Nothing has occurred during the course of the proceedings before this Court that has precluded defendants from fulfilling either this promise or the clerk’s duties in this regard. The circuit court entered an order directing defendants to restore plaintiffs name to the ballot as a candidate for city clerk, and also entered an order denying defendants’ ex parte motion for stay of this directive. The parties failed to swiftly and urgently seek a decision from the circuit court following plaintiffs filing of her action on June 5, 2013, instead, choosing not to request a hearing date earlier than the June 20, 2013 date initially set by the court. Moreover, the parties did not diligently proceed to appeal.[4] In any *630 event, we conclude that the timing of this appeal did not prevent the city clerk from complying with the election laws regarding the mailing of the absentee ballots.
III. ANALYSIS
A. STANDARD OF REVIEW AND MANDAMUS
In their brief on appeal, defendants argue that a writ of mandamus cannot issue because plaintiff failed to plead that they did not perform a clear legal duty, and that an injunction cannot issue because plaintiff failed to meet her burden for such extraordinary relief. Although this Court reviews a trial court’s decision to issue or deny a writ of mandamus for an abuse of discretion, Stand Up for Democracy v Secretary of State, 492 Mich 588, 598; 822 NW2d 159 (2012), “this Court reviews de novo as questions of law whether a defendant has a clear legal duty to perform and whether a plaintiff has a clear legal right to performance.” Barrow v Detroit Election Comm, 301 Mich App 404, 411; _ NW2d _ (2013). This case also requires this Court to *631 construe the statute that governs the process by which nominating petitions are accepted and reviewed, MCL 168.552, and the statute that governs the form, size and content for nominating petitions, MCL 168.544c. Statutory interpretation is also reviewed by this Court de novo. Stand Up, 492 Mich at 598.
The fundamental purpose of judicial construction of statutes is to ascertain and give effect to the intent of the Legislature. In re Certified Question, 433 Mich 710, 722; 449 NW2d 660 (1989); Amburgey v Sauder, 238 Mich App 228, 231-232; 605 NW2d 84 (1999). Once the intention of the Legislature is discovered, it must prevail regardless of any rule of statutory construction to the contrary. Certified Question, 433 Mich at 722. The language of the statute expresses the legislative intent. Dep’t of Transp v Tomkins, 481 Mich 184, 191; 749 NW2d 716 (2008). The rules of statutory construction provide that a clear and unambiguous statute is not subject to judicial construction or interpretation. Id. If the language of the statute is plain and unambiguous, effect must be given to the words used, and judicial construction is neither necessary nor permitted. Johnson v Pastoriza, 491 Mich 417, 436; 818 NW2d 279 (2012). Stated otherwise, when a statute plainly and unambiguously expresses the legislative intent, the role of the court is limited to applying the terms of the statute to the circumstances in a particular case. Dep’t of Transp, 481 Mich at 191. The Legislature’s use of the term “shall” denotes mandatory action or direction, Mich Educ Ass’n v Secretary of State (On Rehearing), 489 Mich 194, 218; 801 NW2d 35 (2011), and the term “may” denotes permissive action, Manuel v Gill, 481 Mich 637, 647; 753 NW2d 48 (2008). “A circuit court’s factual findings are reviewed for clear error, and its legal conclusions are reviewed de novo.” In re Receiv *632 ership of 11910 South Francis Rd, 492 Mich 208, 218; 821 NW2d 503 (2012). Application of the law to the facts presents a question of law subject to review de novo. People v Barrera, 451 Mich 261, 269 n 7; 547 NW2d 280 (1996).
In Barrow, this Court reviewed a mandamus action filed by a challenger to the nominating petitions of Mike Duggan for the office of the Mayor of Detroit, whereby the circuit court granted the relief and directed removal of Duggan’s name as eligible for placement on the primary ballot. This Court set forth the following standards for mandamus, which are applicable in this matter as well:
Duggan challenges the grant of mandamus to plaintiff. A plaintiff has the burden of establishing entitlement to the extraordinary remedy of a writ of mandamus. Lansing Sch Ed Ass’n v Lansing Bd of Ed (On Remand), 293 Mich App 506, 519-520; 810 NW2d 95 (2011). The plaintiff must show that (1) the plaintiff has a clear legal right to the performance of the duty sought to be compelled, (2) the defendant has a clear legal duty to perform such act, (3) the act is ministerial in nature such that it involves no discretion or judgment, and (4) the plaintiff has no other adequate legal or equitable remedy. Vorva v Plymouth-Canton Community Sch Dist, 230 Mich App 651, 655-656; 584 NW2d 743 (1998).
It is undisputed that defendants have the statutory duty to submit the names of the eligible candidates for the primary election, see MCL 168.323 and MCL 168.719. The inclusion or exclusion of a name on a ballot is ministerial in nature. Here, plaintiff himself is a candidate for mayor, as well as a citizen of Detroit. Aside from the instant action, plaintiff has no other adequate legal remedy, particularly given that the election is mere weeks away and the ballot printing deadline is imminent. Plaintiff thus has established that mandamus is the proper method of raising his legal challenge to Duggan’s candidacy. See, generally, Sul *633 livan v Secretary of State, 373 Mich 627; 130 NW2d 392 (1964); Wojcinski v State Bd of Canvassers, 347 Mich 573; 81 NW2d 390 (1957).
The circuit court accepted plaintiffs challenges to Dug-gan’s candidacy, thus, plaintiff established his entitlement to a writ of mandamus. Upon review, if we in turn likewise determine that Duggan did not meet the qualifications to be a candidate for elected office under the charter, plaintiff would have a clear legal right to have Duggan’s name removed from the list of candidates, the Election Commission would have a clear legal duty to remove Duggan’s name, the act would be ministerial because it would not require the exercise of judgment or discretion, and plaintiff would have no other legal or equitable remedy. See Citizens Protecting Michigan’s Constitution v Secretary of State, 280 Mich App 273, 291-292; 761 NW2d 210 (2008), aff'd in result only 482 Mich 960 (2008). Accordingly, we must consider whether Duggan complied with the charter provisions to establish his qualifications to be among the candidates for mayor. [Barrow, 301 Mich App at 411-413.]
Likewise, we must consider whether plaintiffs nominating petitions complied with the charter provision and MCL 168.544c, which we emphasize was the only statutory provision on which defendants focused below and raised in their brief on appeal.
B. REVIEW PROCESS FOR NOMINATING PETITIONS
We begin with a general overview of the statute governing the process by which nominating petitions are accepted and reviewed by the city clerk. In relevant part, MCL 168.552(7) provides that the city clerk with whom nominating petitions are filed “may examine the petitions and investigate the validity and genuineness of signatures appearing on the petitions” and that, subject to subsection (13), the city clerk “may check the signatures against registration records.” MCL 168.552(7) further states:
*634 The city clerk shall make a determination as to the sufficiency or insufficiency of the petitions upon the completion of the examination or investigation, and shall make an official declaration of the findings. A person feeling aggrieved by the determination has the same rights of review as in case of a determination by the county clerk.
The rights of review for a person who is aggrieved by a determination of the county clerk are set forth in MCL 168.552(6), which provides in relevant part:
A person feeling aggrieved by a determination made by the county clerk may have the determination reviewed by the secretary of state by filing a written request with the secretary of state within 3 days after the official declaration of the county clerk, unless the third day falls on a Saturday, Sunday, or legal holiday, in which case the request may be filed not later than 4 p.m. on the next day that is not a Saturday, Sunday, or legal holiday. Alternatively, the aggrieved person may have the determination of the county clerk reviewed by filing a mandamus, certiorari, or other appropriate remedy in the circuit court. A person who filed a nominating petition and feels aggrieved by the determination of the secretary of state may then have that determination reviewed by mandamus, certiorari, or other appropriate remedy in the circuit court.
Defendants argued below that plaintiff did not file the proper appeal regarding the certification of petition signatures with either the Secretary of State or with the circuit court. On appeal, defendants summarily assert that this Court should reverse because plaintiff failed to file a timely appeal with the Secretary of State. We disagree, and conclude that plaintiffs complaint was properly before the circuit court because defendants failed to comply with their statutory duties.
The record is clear that while the department of elections’ initial canvass of plaintiffs nominating petitions—the canvass of plaintiffs petitions conducted *635 before May 7, 2013—resulted in the invalidation of 58 signatures for a variety of reasons, defendants made no “official declaration of the[se] findings.” Thus, plaintiff was given no official or timely notice that defendants had invalidated these petition signatures. Baxter’s May 22, 2013 letter, informing plaintiff that a challenge had been lodged to the circulator’s certificate on two nominating petitions dated November 7, 2013, and that the department of elections agreed with that challenge, gave plaintiff her first notice, and then only indirectly, that some signatures had been invalidated earlier for reasons unrelated to the circulator’s date challenge when it advised her that only 475 of her petition signatures were considered valid. However, pursuant to the plain language of MCL 168.552(6), Johnson, 491 Mich at 436, defendants were required to issue an official declaration of the findings with respect to the invalidation of signatures. We therefore conclude that the indirect notice contained in Baxter’s May 22, 2013 letter to plaintiff was inadequate to constitute the official declaration of the sufficiency or insufficiency of petition signatures that defendants were required to make, and plaintiff was entitled to receive, under MCL 168.552(6) and (7). As such, plaintiff was also wrongfully deprived of any meaningful review by the Secretary of State of the city clerk’s determination that certain signatures were invalid.
We find it particularly disturbing that after plaintiff subsequently reviewed the reasons for invalidation at the location where the petitions were stored, made her own assessment regarding the validity of the signatures, and demanded a review with the city clerk and the Secretary of State, the department of elections either failed to respond or responded by stating it was unable to comply with her request. While the Michigan Bureau of Elections concluded that plaintiffs May 30, *636 2013 “appeal” was untimely on the apparent basis that the May 22, 2013 letter from Baxter to plaintiff was the clerk’s determination regarding the invalid signatures, we find that, given the city clerk’s deficient declaration of findings, plaintiff was deprived of a meaningful review of the clerk’s determination by the Secretary of State. Accordingly, the circuit court’s consideration of plaintiffs third amended complaint for mandamus, superintending control, preliminary injunction and declaratory judgment was warranted under MCL 168.552(6).[5]
C. NOMINATING PETITIONS
We next address defendants’ argument that the trial court erred by concluding that defendants improperly invalidated several signatures contained in the nominating petitions and address whether the relief ordered by the circuit court was appropriate.
First, defendants contend that the trial court erred by finding that three of plaintiffs signatures were improperly invalidated by defendants because they did comply with the requirements of MCL 168.544c. MCL 168.544c(l) provides that a nominating petition “shall be in the following form” as set forth in the statute. The *637 statutory form contains a section for signatures and signature lines with the following headings above the lines: “Printed Name and Signature,” “Street Address or Rural Route,” “Zip Code,” and “Date of Signing,” with “Mo.” “Day” and “Year” underneath the last heading. MCL 168.544c(2) provides:
The petition shall be in a form providing a space for the circulator and each elector who signs the petition to print his or her name. The secretary of state shall prescribe the location of the space for the printed name. The failure of the circulator or an elector who signs the petition to print his or her name, to print his or her name in the location prescribed by the secretary of state, or to enter a zip code or his or her correct zip code does not affect the validity of the signature of the circulator or the elector who signs the petition. A printed name located in the space prescribed for printed names does not constitute the signature of the circulator or elector.
MCL 168.544c(4) provides, in relevant part, that “[t]he circulator of a petition shall sign and date the certificate of circulator before the petition is filed. A circulator shall not obtain electors’ signatures after the circulator has signed and dated the certificate of circulator.”
Defendants proclaim that the Legislature “did not provide for a valid petition signature that was without the actual signature of the individual, was without address, or was without date.” As we understand this argument, relevant to the circuit court’s actual ruling, the statute above affirmatively states that a signature remains valid even if the elector fails to print his or her name, to enter a zip code or his or her correct zip code, and thereby the failure to excuse other omissions (such as the date of signing) should invalidate the person’s signature. Citing Stand Up for Democracy, 492 Mich at 588 for the proposition that “substantial compliance” is not sufficient, defendants assert that the individual *638 petition entries that were without a printed name, an address or a date, are not in compliance with the statute and therefore the signature must be found invalid. We disagree.
While the plain language of MCL 168.544c(2) does require that the circulator “shall” properly date the petition, evidencing the necessity of mandatory action on the part of the circulator, Mich Educ Ass’n, 489 Mich at 218, in contrast, the plain language of MCL 168.544c(2) does not contain any language requiring that the elector shall “date” the petition. Johnson, 491 Mich at 436.[6] In contrast, for example, under MCL 168.954, the Legislature specifically requires a signer of a recall petition to “affix his or her signature, address, and the date of signing.” There is no similar mandatory provision contained in MCL 168.544c, and defendants fail to refer to any other statute requiring the elector to include the date of signing on a nominating petition.[7] Accordingly, we cannot conclude that a person’s failure to date his or her signature renders the signature invalid. The trial court did not err by concluding that the electors’ undated signatures were appropriately counted on the nominating petitions.
Finally, defendants argue that any individual signature lines that were invalidated because the voter registration could not be confirmed by name and address “are not proper subjects of writ of mandamus.” Defendants assert that the investigation of petitions for names that do not have a current registration is not *639 ministerial in nature. We do not find this argument persuasive. As mentioned earlier in this opinion, under MCL 168.552(7), the city clerk’s review of the validity and genuineness of signatures appearing on the nominating petitions is subject to MCL 168.552(13), which provides:
The qualified voter file may be used to determine the validity of petition signatures by verifying the registration of signers. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote in the city or township designated on the petition, there is a rebuttable presumption that the signature is invalid. The qualified voter file shall be used to determine the genuineness of a signature on a petition. Signature comparisons shall be made with the digitized signatures in the qualified voter file. The county clerk or the board of state canvassers shall conduct the signature comparison using digitized signatures contained in the qualified voter file for their respective investigations. If the qualified voter file does not contain a digitized signature of an elector, the city or the township clerk shall compare the petition signature to the signature contained on the master card. [Emphasis added.]
We find the “rebuttable presumption” language above indicates that a person challenging the clerk’s invalidation of the signatures may present evidence to rebut the clerk’s conclusion and therefore establish that the signature on the nominating petition is the signature of a person who is registered to vote. In this case, the city clerk refused plaintiffs demand to provide the procedure for a “full and fair review of the contested assessment” regarding the signatures in a timeframe that permitted plaintiff to seek a meaningful review of the invalidated signatures by the Secretary of State. Therefore, plaintiff had available to her the legal remedy of a mandamus/superintending control/declaratory action in the circuit court to force a review of the signatures.
*640 It is clear from the record of the hearings below that, had this signature review taken place before defendants determined that several signatures were invalid, this whole proceeding may have been avoided. According to an affidavit submitted by Gina Avery, the department of elections disqualified the signatures of three petitioners under the category “Can’t determine,” which defendants’ attorney explained at the hearing was the result of the address listed on the petition not matching the voter card with the same name. The city proclaimed that if there were several people with the same name, it was “impossible” to verify the signature. Yet, plaintiff demonstrated that this impossibility simply did not exist. Her attorney presented the signature from the qualified voter file whose signature “best” matched the disputed signature on the petition. Once the circuit court found the signatures matched, the circuit court validated the signatures.[8]
*641 Even though it is not entirely clear whether the circuit court’s ruling resulted in an order of mandamus, superintending control, or declaratory relief, we conclude that the circuit court’s review of the signatures was proper. Because plaintiff demonstrated that she had the minimum number of valid signatures, she had a clear legal right to the relief granted by the circuit court.
IV CONCLUSION
We hold that the circuit court properly ordered plaintiffs name to be placed on the August 6, 2013, primary election ballot as a candidate for the office of Detroit City Clerk. Defendants failed to comply with their statutory duties with respect to review of nominating petitions and plaintiff had a clear legal right to performance. In light of defendants’ failure to afford plaintiff a meaningful review by the Secretary of State, the circuit court’s consideration of plaintiffs third amended complaint for mandamus, superintending control, preliminary injunction and declaratory judgment was warranted under MCL 168.552(6).
Affirmed. No costs to be taxed, a public question being involved. MCR 7.219(A). This opinion is given immediate effect pursuant to MCR 7.215(F)(2).
Fort Hood, EJ., and Wilder and Stephens, JJ., concurred.

 A copy of the current city charter was not contained in the lower court record, but defendants filed a copy of the relevant provision on July 10, 2013.

 The temporary restraining order and the order to show canse were signed by Judge Wendy Baxter. However, the case was assigned to Judge Patricia Fresard. Judge Fresard expressed understandable concern at the initial hearing regarding the parties’ failure to file judge’s copies of the pleadings with her office as well as the parties’ failure to apprise the court of the urgency of the matter.

 Because these three signatures were initially invalidated on the ground that they were not dated, no one had verified whether any of the *629 persons were registered voters. Defendants’ attorney later announced that their voter registrations were verified.

 On June 27, 2013, the circuit court ruled at the conclusion of the fourth hearing that plaintiff had met the signature requirements to appear on the ballot. On June 28, 2013, the circuit court denied *630 defendants’ ex parte motion for stay of this ruling. Defendants did not file a claim of appeal until July 2, 2013, which was accompanied by a motion for stay, which this Court denied, Wilcoxon v Detroit Election Comm, unpublished order of the Court of Appeals, entered July 8, 2013 (Docket No. 317012), and a motion to expedite the appeal. However, defendants did not file the brief on appeal and a motion for peremptory reversal until July 3, 2013. The hearing transcripts were not received by this Court until July 5, 2013, and July 8, 2013, and there is some question as to how or whether the urgency of this appeal was communicated to the court reporters. Although plaintiff advised that she might pursue a bypass to our Supreme Court or file a motion to affirm, she did neither. Our Supreme Court has advised the bar association that election-related legal issues may be facilitated by filing directly in the Supreme Court prior to any resolution by the Court of Appeals. See Scott v Dir of Elections, 490 Mich 888, 889; 804 NW2d 199 (2011); MCR 7.302(C)(1). The parties’ conduct in this case is not consistent with their claims of urgency and the need for speedy resolution.

 We note that the circuit court seemingly ruled that because MCL 168.552(6) “alternatively” permitted mandamus, certiorari or other appropriate relief in the circuit court, an aggrieved person could seek review of the city clerk’s decision by the Secretary of State, the circuit court, “or both as she chooses.” We question this interpretation of MCL 168.552(6), which arguably requires instead that an aggrieved person choose a particular appellate remedy in the statute to the exclusion of the other. However, defendant has not raised this issue on appeal and it has not been briefed at all by the parties. Thus, we decline to more fully address this issue because we find it is unnecessary to the resolution of this appeal. Mitcham v Detroit, 355 Mich 182, 203; 94 NW2d 388 (1959) (“The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow.”).

 MCL 168.544c(6) further states that an individual “shall” not sign more nominating petitions for the same office than there are persons to be elected to the office, and MCL 168.544c(7) lists other actions that an individual “shall” not do.

 Notably, in their brief defendants have not cited or discussed any provision in the city charter that may be applicable.

 In their reply brief, defendants contend that the circuit court erred by conducting its own comparison of the signatures on the petition and the voter-registration information. At the June 27, 2013 hearing, defense counsel objected to plaintiffs failure to present a handwriting expert. Plaintiffs counsel noted that the actions taken by plaintiff and her team were consistent with how the director of elections verified signatures. There was never any evidence that the director of elections employed handwriting experts to verify signatures. Defense counsel later acknowledged that she “told counsel before if he wishes to have the Judge take judicial notice that the signatures match, then that is the process that he should take.” The circuit court noted that if a signature was verifiable to the “nonexpert eye,” it would be verified, but if the court was uncomfortable in verifying the signature, it would not do so. The circuit court expressly stated on the record that the parties did not ask for an adjournment to obtain handwriting experts. At that time, defense counsel did not request the opportunity to submit the signatures to a handwriting expert, despite the trial court’s statement. A party may not harbor error as an appellate parachute by assenting to action in the lower proceeding and raising the issue as an error on appeal. Bates Assoc, LLC v 132 Assoc, LLC, 290 Mich App 52, 64; 799 NW2d 177 (2010). Because there is no indication in the record that the director of elections employed *641 an expert in the ordinary course of business to verify signatures and the circuit court compared specific identifying features of different letters, we cannot conclude that the circuit court’s verification of the signatures was clearly erroneous. City of Flint v Chrisdom Props, Ltd, 283 Mich App 494, 498; 770 NW2d 888 (2009).