*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAVEH ESMAEL and KAMRAN ASLANI,

   Plaintiffs/Counterdefendants-
   Appellants,

v

SIYAVOOSH SHEKOOHFAR, 1225 MILAN, LLC,
a Michigan limited liability company, and MILAN &
I-23 GASOLINE STATION, INC, a Michigan
corporation,

   Defendants/Counterplaintiffs-
   Appellees.

UNPUBLISHED
June 16, 2025
9:33 AM

No. 367351
Washtenaw Circuit Court
LC No. 19-001249-CB

Before: BOONSTRA, P.J., and REDFORD and MARIANI, JJ.

PER CURIAM.

Plaintiffs/Counterdefendants Kaveh Esmael and Kamran Aslani (collectively, plaintiffs) appeal by right the judgment of the trial court, entered after a jury trial, awarding them zero dollars in damages and awarding defendants/counterplaintiffs Siyavoosh Shekoohfar, 1225 Milan, LLC (1225 Milan) and Milan & I-23 Gasoline Station, Inc (MI-23) (collectively, defendants) $60,000 on their counterclaim as well as attorney fees and costs. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2007, Esmael agreed to contribute one-third of the down payment needed to purchase a gas station with Shekoohfar in Milan. Esmael and Shekoohfar signed a letter of understanding prepared by their attorney that stated in relevant part:

> You [Shekoohfar] and I [Esmael] have agreed that we will contribute funding to the earnest money deposit and loan closing costs in the following proportions: 2/3 (you) and 1/3 (me). As a result of those contribution proportions, you have agreed that the family members that have joined me in this investment and I will have a 1/3 interest in the equity of the gas station property and the business. We will get that equity out of the business when the property and the business are eventually

-1-

sold. You will also distribute any operating profits of the business in same 2/3-1/3 ratio.

I intend to form a limited liability company to hold this investment. The members of that LLC will be me and my family members who have joined me in this investment.

Eventually, you and I will enter into a formal written agreement that spells out our business relationship for this investment in greater detail. [Letter of understanding, 12/12/07, attached as exhibit K to plaintiffs' brief on appeal.]

Shekoohfar formed 1225 Milan for the purpose of acquiring the property, and he was its sole member. Its operating agreement provided in relevant part that "any funds contributed to or advances made on behalf of [1225 Milan] by [Shekoohfar] that are not designated as capital contributions will be loans payable by [1225 Milan] to [Shekoohfar] on demand together with interest at the prime rate from the date of the contribution or advance until repaid in full. . . . "[1225 Milan] will reimburse [Shekoohfar] for all expenses of [1225 Milan] reasonably incurred and paid for by [Shekoohfar] on behalf of [1225 Milan]."

Esmael contributed just over $60,000 for the down payment, with one-third of that amount coming from Aslani. Shekoohfar provided $120,000. A mortgage to purchase the property in the amount of $720,000 was obtained by 1225 Milan. Shekoohfar personally guaranteed the mortgage.

In 2008, Shekoohfar and Esmael signed an Agreement Regarding Equity in 1225 Milan, LLC (the Agreement). The Agreement contained the following provisions relevant to issues on appeal:

> 1.  Share of Equity. The parties will have the following shares in all of the equity of the Company [1225 Milan]:
>
> Shekoohfar:          66.67%
>
> Esmael:              33.33%
>
> Shekoohfar will pay to Esmael 1/3 of any distributions that the Company makes to Shekoohfar and 1/3 of the equity that Shekoohfar realizes upon the eventual sale of the real estate and gas station business located at 1225 Dexter Road, Milan, MI. . . . On or before the 3rd day of each calendar quarter, Shekoohfar will give Esmael a report stating the income and expenses of the Company for the previous quarter and a copy of the bank statement for any financial account maintained by the Company. Shekoohfar will also give Esmael a copy of the federal tax form 1040, Schedule C or any federal income tax return filed by the Company, for each tax year. Shekoohfar shall provide Esmael with other information regarding the results of operating the business of the Company, upon reasonable request by Esmael, and with information regarding Shekoohfar's efforts to negotiate and close the sale of the business of the Company. [Agreement, 4/10/08, attached as Appendix L to plaintiffs' brief on appeal.]

The Agreement also provided Esmael with a right of first refusal regarding any offers to buy 1225 Milan or any assets of the business operated by the company.

When 1225 Milan purchased the gas station property, it was being operated by a commercial tenant; however, later in 2008, the tenant abruptly vacated the property and broke the lease. Shekoohfar was unable to find a long-term tenant to run the gas station. In 2009, Shekoohfar formed MI-23 (of which Shekoohfar was the sole member) to serve as a tenant and operate the gas station. Shekoohfar began operating the gas station himself, and subsequently entered into an agreement with a friend, Daryoush Zahraei, who agreed to work at the gas station in exchange for approximately $10,000 per year, with the remaining wages to be paid when the station was sold.

Shekoohfar continued to operate the gas station until it was sold in 2021. Shekoohfar did not provide quarterly reports to Esmael as the Agreement required; nor did he provide a copy of the federal income tax return filed each year, although in 2012 he did provide tax returns for the previous four tax years.

Plaintiffs filed suit in 2019, asserting claims for breach of contract, breach of implied contract, declaratory relief, and equitable accounting against all defendants, and a claim for breach of fiduciary duty against Shekoohfar based on his alleged failure to provide financial information under the Agreement and failure to distribute profits under the Agreement. Defendants filed a counterclaim in 2020, asserting claims of breach of contract and declaratory relief against plaintiffs,[1] and alleging that they had failed to make requested contributions to the business as required under the Agreement. In August 2020, plaintiffs moved for summary disposition of defendants' counterclaim, arguing that defendants' claims were barred by the statute of limitations; that Shekoohfar could not maintain a claim for unpaid wages, either for himself or on behalf of Zahraie; that the Agreement did not obligate plaintiffs to make contributions to defendants; and that defendants were not entitled to equitable relief. After a hearing, the trial court denied the motion.

The gas station property was sold in 2021 for $818,756.40, of which $528,899.08 was disbursed to 1225 Milan after closing. Defendants never provided any portion of the proceeds to plaintiffs.

The trial court held a three-day jury trial in December 2022. A trial, Esmael testified that he had never received quarterly reports or annual accountings from Shekoohfar, that Shekoohfar had provided plaintiffs with copies of tax returns in 2012, and that he asked Shekoohfar for quarterly reports "about maybe 20 times" in the years before the lawsuit was filed. Esmael stated that Shekoohfar would reply to his requests by saying "this is my business" and that Esmael would get his one-third equity when the business was sold. Esmael also testified that he asked Shekoohfar about year-end profits every year, and that Shekoohfar "always complained that he's losing money, he's putting his own money in, you know. All—all the time, no numbers, and he's always asking for money again." Esmael testified that Shekoohfar never showed him any documentation of loans

---

[1] Defendants' counterclaim also contained a claim for indemnification against 1225 Milan; however, defendants later voluntarily dismissed this count.

to the business or year-end profits or losses. He opined that he could have reported annual losses incurred by the business on his own income taxes in order to pay less tax.

Esmael further testified that, in 2009, he offered to help with the day-to-day operations of the gas station, but that Shekoohfar refused and instead "asked for money" because the gas station was losing money. Esmael admitted that he was not a member, officer, or director of either 1225 Milan or MI-23. Esmael stated that most of his interactions with Shekoohfar over the years involved Shekoohfar stating that the company was losing money and asking plaintiffs to contribute money to the business, although Esmael did not recall ever being told a specific dollar amount. Esmael said that Shekoohfar never requested contributions from him in writing. Esmael stated that he believed he did have a responsibility to contribute to the business, if Shekoohfar had ever shown him proof that a contribution was necessary. On cross-examination, Esmael could not state a specific amount of damages he had incurred. He denied ever being asked to contribute to mortgage payments.

Shekoohfar admitted at trial that he had not provided Esmael with quarterly reports or regularly provided copies of tax returns under the Agreement. Shekoohfar testified that he had never generated quarterly reports or statements for the business. He stated that Esmael and Aslani could have come to the gas station at any time to review its financial documents. Shekoohfar testified that he never paid any profits to Esmael because "there was no profit." He indicated that plaintiffs had asked him how the business was doing many times over the years, to which he generally responded that the business was losing money. Shekoohfar agreed that he had made seven or eight cash loans to or payments on behalf of 1225 Milan; three of those loans or contributions had occurred since 2012. Shekoohfar understood these loans as having been made under 1225 Milan's operating agreement.

Shekoohfar testified to personally telling Esmael that he was loaning the business money, although he did not put the information in writing. He testified that at some point he informed Esmael that 1225 Milan had unpaid wages that would have to be paid when the property was sold, because Zahraie was working for $9,000 per year which was "one fifth of what I supposed [sic] to give him on this condition that I'm going to give him [sic] when I sell the property." Shekoohfar indicated that he met with Esmael in 2009 and asked Esmael to contribute money for inventory, and that Esmael refused. Esmael instead offered to work at the gas station, but wanted to be paid $400 per week, which Shekoohfar believed the business could not afford. Shekoohfar also testified to another meeting in 2012 with Esmael and Aslani, in which he told them that the balloon payment on the mortgage for the gas station was due and that they needed to refinance or they would "lose everything." According to Shekoohfar, they discussed the various expenses the gas station had incurred, including wages, as well as how much money was being made in sales. Shekoohfar ended up refinancing the mortgage on the business himself. Shekoohfar testified that the three had another meeting in 2013 to discuss the refinancing. After that, Shekoohfar did not hear from Esmael or Aslani until 2017, when their attorney asked for updated tax records. Shekoohfar testified that, in 2019, he asked Esmael to contribute approximately $83,000 toward the mortgage on the property, but that no contribution was made.

Aslani testified that he met with Esmael and Shekoohfar in 2012 and 2013 to discuss the financial state of the gas station and to request documentation from Shekoohfar. He stated that Shekoohfar would not share details of the business with him, but would make requests for money

-4-

and say the business was losing money. He testified that he spent a day in his attorney's office reviewing boxes of documents related to the business, but that he did not have time to review all of the documents. When asked what specific damages he believed he had incurred as a result of not receiving quarterly reports and annual accountings from Shekoohfar, he stated that he was not a legal expert or accountant and would not "make a judgment on that." Aslani stated that he trusted his attorney to "come up with those numbers" regarding damages.

During closing arguments, plaintiffs' attorney stated that plaintiffs were seeking economic damages of one-third of the reported net profits on 1225 Milan's federal tax returns for the years 2012 to 2018 inclusive, as well as one-third of the amount dispersed to 1225 Milan for the sale of the business and real estate, which the attorney calculated to total $251,729.03.

The jury delivered a verdict as described. Plaintiffs subsequently moved the trial court for a judgment notwithstanding the verdict (JNOV) or a new trial. Plaintiffs also requested that the trial court rule on their claims for declaratory relief and equitable accounting, as those claims were not submitted to the jury. The trial court denied plaintiffs' motion. Defendants moved the trial court for an award of costs and attorney fees under the offer of judgment rule, MCR 2.405. After an evidentiary hearing, the trial court awarded defendants attorney fees and costs in the amount of $63,099. This appeal followed.

## II. MOTION FOR JNOV OR NEW TRIAL

Plaintiffs argue that trial court erred by denying their motion for JNOV regarding their breach of contract claim. We disagree. We review de novo a trial court's decision on a motion for JNOV. *Morales v State Farm Auto Ins Co*, 279 Mich App 720, 733; 761 NW2d 454 (2008). The trial court should grant a motion for JNOV only when the evidence and all legitimate inferences viewed in a light most favorable to the nonmoving party fail to establish an issue for the jury. *Id*. "If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand." *Severn v Sperry Corp*, 212 Mich App 406, 412; 538 NW2d 50 (1995). We review for an abuse of discretion a trial court's decision to grant or deny a new trial. *Hill v Sacka*, 256 Mich App 443, 460; 666 NW2d 282 (2003). A trial court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). This Court gives substantial deference to a court's determination that a verdict was not against the great weight of the evidence. *Guerrero v Smith*, 280 Mich App 647, 666; 761 NW2d 723 (2008). Witness credibility and the relative strength of the parties' evidence are questions reserved for the jury and are not a proper basis for this Court to overturn a trial court's denial of a motion for JNOV or a new trial. See *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 617; 886 NW2d 135 (2016); *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008).

Plaintiffs argue that the jury clearly erred by not awarding plaintiffs any damages despite finding that defendants had breached the contract. Plaintiffs note that Shekoohfar did not dispute that the Agreement was valid, and they argue that the plain language of the Agreement and the evidence at trial required that plaintiffs receive at least some amount of money from the operation of the gas station or the sale of the gas station property. We disagree.

At trial, defendants' theory of the case was that the gas station had never been profitable, and in fact that Shekoohfar had been required to support the business with cash infusions and by working without taking a paycheck. Shekoohfar presented evidence of unpaid wages and contributions to the business that were to be repaid from the proceeds of the sale. He also presented evidence that the operating agreement of 1225 Milan required the company to repay loans and payments made on behalf of the company by Shekoohfar. Plaintiffs both testified that Shekoohfar consistently, for years, informed them that the business was losing money and asked them for contributions. The parties agreed that plaintiffs had never provided any additional contributions to the business. Further, Aslani admitted that he only spent one day reviewing the gas station's records, and he repeatedly declined to testify to a specific amount of damages owed. In closing arguments, plaintiffs' counsel presented the jury with a damages amount calculated from the gas station's federal tax returns and the net proceeds from the sale paid to Shekoohfar, without addressing any of the unpaid wages or personal contributions made by Shekoohfar. Defendants' counsel presented evidence that the proceeds of the sale distributed to 1225 Milan were less than the amount of 1225 Milan's outstanding unpaid liabilities, i.e., unpaid wages and reimbursement to Shekoohfar for loans and payments made on behalf of the company.

On this record, we cannot say that, viewed in the light most favorable to defendants, the evidence was insufficient to support the jury verdict. *Morales*, 279 Mich App at 733. Although plaintiffs argued that they were entitled to a one-third share of the net profits reported by 1225 Milan each year, the Agreement provides that they were entitled to one-third of any distributions made to Shekoohfar; plaintiffs never provided evidence that any such distributions were made. Further, plaintiffs insist that the net amount distributed to 1225 Milan at the close of the sale of the property should have been allocated according to the Agreement; however, the Agreement actually entitles them to one-third of any "equity that Shekoohfar realizes" upon the sale. Shekoohfar testified that the gas station business had significant liabilities that needed to be paid from the sale proceeds, and that there was no remaining equity to distribute. Reasonable jurors could have concluded that there was simply no profit or equity to distribute to plaintiffs. *Severn*, 212 Mich App at 412. Although plaintiffs clearly disagree with the jury's view of the evidence presented and its determinations regarding witness credibility, they cannot retry their case in this Court under the guise of obtaining appellate relief. *Hecht*, 499 Mich at 605-606 and n 29; *Severn*, 212 Mich App at 412. For the same reasons, the jury verdict was not against the great weight of the evidence. See *Kelly v Builders Square*, 465 Mich 29, 41; 632 NW2d 912 (2001) ("A new trial may not be granted if an interpretation of the evidence logically explains the jury's findings.").

## III. NON-JURY CLAIMS

Plaintiffs also argue that the trial court erred by denying their claims for declaratory relief and an accounting. We disagree.

This Court reviews de novo a trial court's determination whether an actual controversy exists that warrants declaratory relief. *Mercurio v Huntington Nat'l Bank*, 347 Mich App 662, 673; 16 NW3d 748 (2023). MCR 2.605 provides in relevant part that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." See also *Mercurio*, 347 Mich App at 675. "An actual controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve

the plaintiff's legal rights." *Id*. (quotation marks and citation omitted). Declaratory relief is not appropriate when a plaintiff is seeking relief from a past injury. *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011). In this case, the disputed issues involved plaintiffs' entitlement to profits from the gas station owned by 1225 Milan and to a portion of the proceeds from the sale of the gas station. It is undisputed that the sale has occurred and that 1225 Milan no longer owns the property. Plaintiffs have no need for declaratory relief to guide future conduct when their claims for damages were based on alleged breaches of contract that have already occurred. Accordingly, the trial court did not err by dismissing plaintiffs' claim for declaratory relief. *Mercurio*, 347 Mich App at 675.

We review de novo an action for an accounting. See *Crooker v Crooker*, 340 Mich 250, 251; 65 NW2d 767 (1954); *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013). Members of a limited liability company are entitled to request a formal accounting of that company's affairs. MCL 450.4503(5). Plaintiffs are not members of 1225 Milan; however, the Agreement between Shekoohfar and Esmael does require Shekoohfar to provide Esmael with information regarding 1225 Milan's finances. Assuming that this entitles Esmael to require that Shekoohfar initiate a formal accounting of 1225 Milan, the trial court nonetheless did not err by denying this claim. "An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Boyd v Nelson Credit Ctrs, Inc*, 132 Mich App 774, 779; 348 NW2d 25 (1984), citing *Cyril J Burke, Inc v Eddy & Co*, 332 Mich 300, 303; 51 NW2d 238 (1952). Plaintiffs received extensive discovery in this case and have not identified any relevant information that they requested and did not receive. Plaintiffs had ample time to examine discovery materials and determine the amounts at issue, yet Aslani testified that he only reviewed discovery materials for one day—he additionally declined to specify plaintiffs' alleged damages on the basis of being neither a legal expert nor an accountant. Plaintiffs have not explained why discovery was insufficient in this case.[2] Accordingly, the trial court did not err by denying their claim for an accounting. *Sys Soft Technologies*, 301 Mich App at 650.

## IV. DEFENDANTS' COUNTERCLAIM

Plaintiffs also argue that the trial court erred by denying their motions for summary disposition, for a directed verdict, and for JNOV regarding defendants' counterclaim for breach of contract. We disagree.

## A. SUMMARY DISPOSITION

Plaintiffs argue that the trial court erred by denying their motion for summary disposition of defendants' counterclaim. We disagree. We review de novo a trial court's decision on a motion

---

[2] Plaintiffs also briefly assert that a summary of profits and losses prepared by Shekoohfar and offered by defendants was improperly admitted by the trial court under MRE 701. To the extent that plaintiffs seek relief based on this argument, we disagree. The document in question was a summary prepared from materials available to all parties, not an expert opinion. See MRE 1006. Any challenges to the accuracy or completeness of a summary would go to the weight of the evidence, not its admissibility. See *Hofmann v Auto Club Ass'n*, 211 Mich App 55, 101-102; 535 NW2d 529 (1995).

for summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

Summary disposition under MCR 2.116(C)(7) is appropriate when a plaintiff's claim is barred by a statute of limitations. *Farm Bureau Mut v Combustion Research Corp*, 255 Mich App 715, 720; 662 NW2d 439 (2003). In reviewing a motion under MCR 2.116(C)(7), a court must accept as true a plaintiff's well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Id.*

A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and is decided on the pleadings alone. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A reviewing court must accept all well-pleaded factual allegations as true and determine whether a claim is so clearly unenforceable that no factual development could justify recovery. *Id.* at 160.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The moving party is entitled to summary disposition if, viewed in the light most favorable to the nonmoving party, no genuine issue of material fact exists. *Coblentz v City of Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006).

This Court reviews de novo the interpretation of contract language. *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 39; 892 NW2d 794 (2017). We give contractual terms their ordinary meaning, unless those terms are defined in the contract itself. *Id.*

### 1. RIGHT TO SEEK CONTRIBUTIONS

Plaintiffs argue that the trial court erred by denying their motion for summary disposition, because neither the letter of understanding nor the Agreement provide that they had a duty to contribute to the operation of the gas station. We disagree. A contract may be modified by the parties through mutual assent. See *Turner v Williams*, 311 Mich 563, 565; 19 NW2d 100 (1945). Although the letter of understanding and the Agreement do not expressly provide that plaintiffs had such a duty, neither document explicitly states any party's rights or obligations with respect to contributing additional funds to 1225 Milan or the gas station business. Nor does either document contain a merger clause or similar provision indicating that the document represents the parties' entire agreement, or any clause concerning modification of the Agreement. Plaintiffs alleged in their complaint that they "hold, and reasonably believe they hold, 1/3 of the ownership" in 122 Milan, and in fact sought a declaration from the trial court that they were members of the LLC. Esmael testified at his deposition that he believed he was "one-third owner" of the business and property and "entitled to profit and loss." Esmael further stated that he was supposed to have been "involved" with the gas station, and that "whenever [Shekoohfar] demanded money, we gave it to him." Esmael also testified to meeting with Shekoohfar in 2012, that Shekoohfar told plaintiffs that the business was losing money and that plaintiffs owed money for the business. Esmael claimed repeatedly that it was Shekoohfar's failure to provide specific financial information that resulted in plaintiffs' non-contribution, not that he was not responsible for any of the businesses losses or expenses. Viewed in the light most favorable to the defendants, *Coblentz*, 475 Mich at 569, there was at least a genuine issue of material fact regarding whether the parties had agreed that plaintiffs (or at least Esmael) were obligated to contribute money to the operation of the gas station or payment of its debts, notwithstanding the fact that the Agreement does not explicitly state that they had such an obligation. See *Detroit Police Officers Ass'n v Detroit*, 452

Mich 339, 345, 551 NW2d 349 (1996) (noting that whether the parties to a contract agreed to modify it can be determined from their course of conduct). Therefore, the trial court did not err by denying plaintiffs' motion for summary disposition on this basis. *Corley*, 470 Mich at 278.

## 2. STATUTE OF LIMITATIONS

Plaintiffs argue that the trial court erred by denying their motion for summary disposition of defendants' counterclaim as barred by the statute of limitations. See MCR 2.116(C)(7). We disagree. The limitations period for a breach of contract action is six years. MCL 600.5807. In the first instance, plaintiffs admit in their brief on appeal that approximately $135,000 of the damages claimed by Shekoohfar from plaintiffs' failure to make requested contributions to the business occurred during the 6-year limitations period. Although plaintiffs dispute these damages, the fact remains that these claimed damages were entirely within the limitations period. Further, plaintiffs admitted that they failed to raise the statute of limitations as a defense in their first responsive pleading, and never moved to amend their pleadings to add the defense. Therefore, they have waived this defense. See *Walters v Nadell*, 481 Mich 377, 389; 751 NW2d 431 (2008); *Florence Cement Co v Vettraino*, 292 Mich App 461, 476; 807 NW2d 917 (2011).

Moreover, all three of the individual parties in this case testified that Shekoohfar asked plaintiffs to contribute money to the business nearly every time they spoke, and it was undisputed that plaintiffs never provided funds in response to these requests. A cause of action for breach of contract accrues when a party fails to perform under the contract. *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 245; 673 NW2d 805 (2003). Therefore the relevant inquiry was not when 1225 Milan or Shekoohfar incurred a specific debt, but when plaintiffs failed to provide a contribution required under the contract. See *Mich Millers Mut Ins Co v West Detroit Bldg Co, Inc*, 196 Mich App 367, 372 n 1; 491 NW2d 1 (1992) ("A breach of contract claim accrues on the date of the breach, not the date the breach is discovered."). Plaintiffs have not established that all of the damages claimed by defendants were time-barred. Accordingly, the trial court did not err by denying plaintiffs' motion for summary disposition under MCR 2.116(C)(7).

## 3. LACK OF LEGAL CITATION

Plaintiffs also argue that the trial court erred by denying their motion for summary disposition based on defendants' lack of citation to legal authority in their response to plaintiffs' motion. We disagree. Although defendants primarily focused their argument on the facts of the case, defendants' response to plaintiffs' motion for summary disposition adequately cited to legal authority and court rules. Defendants' response to plaintiffs' arguments were coherent and detailed. There is simply no basis upon which to conclude that defendants abandoned or waived their arguments against summary disposition. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015). Moreover, our caselaw and court rules make explicit the burden of proof for the moving party and the nonmoving party:

> In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists. Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on

mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. [*Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996) (citations omitted).]

In this case, defendants responded to plaintiffs' motion by setting forth specific facts that they argued showed a genuine issue of material fact, supported by documentary evidence such as deposition testimony and financial documents. The trial court did not err by denying plaintiffs' motion for summary disposition on this basis. *Corley*, 470 Mich at 278.

## B. DIRECTED VERDICT/JNOV

Plaintiffs also argue that the trial court should have directed a verdict of no cause of action, or entered a JNOV, regarding defendants' counterclaim. We disagree. To the extent plaintiffs argue that the trial court should have directed a verdict or entered a JNOV for reasons we have already discussed in the context of plaintiffs' motion for summary disposition, we hold that the trial court did not err by failing to do so.

Plaintiffs contend that the trial court should have entered a directed verdict or JNOV regarding defendants' counterclaim under the doctrine of prior breach. Specifically, they argue that Shekoohfar breached the Agreement first by failing to provide quarterly reports and annual tax returns, and that this breach relieved plaintiffs of their obligations under the contract. We disagree.

"[O]ne who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach . . . ." *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (internal quotation and citation omitted). "However, the rule only applies if the initial breach was substantial," which occurs when the other party does not obtain "the benefit which he or she reasonably expected to receive." *Id*. (second internal quotation and citation omitted). Put another way, a substantial breach is one that "has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964).

In this case, Shekoohfar admitted that he did not provide quarterly reports to plaintiffs and that he did not timely provide copies of each year's tax return as it was filed. Shekoohfar therefore breached the Agreement, as the jury found. However, the jury also found that plaintiffs were not damaged by that breach. We agree with the jury. Plaintiffs admitted to receiving annual tax returns when requested. Shekoohfar testified that he never prepared quarterly reports, but that plaintiffs were permitted to review the financial records of the gas station whenever they wished. Viewed in the light most favorable to defendants, *Morales*, 279 Mich App at 733, a reasonable jury could conclude that plaintiffs suffered no actual damages from Shekoohfar's breach of the Agreement, *Severn*, 212 Mich App at 412. Nor have plaintiffs otherwise shown how Shekoohfar's breach was "substantial" so as to support the invocation of the doctrine of prior breach. Accordingly, the trial court did not err by declining to direct a verdict or enter a JNOV on that basis.

## V.  ATTORNEY FEES

Plaintiffs argue that the trial court erred by awarding attorney fees to defendants under the offer-of-judgment rule, and also that the trial court erred in its determination of the reasonableness of amount awarded.  We disagree.  We review de novo the interpretation and application of the offer-of-judgment rule, but we review for clear error the trial court's findings of fact underlying an attorney fee award.  *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 518; 844 NW2d 470 (2014).  We review for an abuse of discretion a trial court's determination of the reasonableness of an attorney fee, as well as its decision regarding the "interest of justice" exception.  *Id.*, citing *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008).

## A.  OFFER-OF-JUDGMENT RULE

MCR 2.405 governs offers of judgment; the purpose of the rule is to "encourage settlement and to deter protracted litigation."  *AFP Specialties*, 303 Mich App at 518.  Prior to trial, "a party may serve on the adverse party a written offer to stipulate to the entry of a judgment for the whole or part of the claim, including interest and costs then accrued."  MCR 2.405(B).  If a party does so, the adverse party may accept or reject the offer.  MCR 2.405(C).  If the offer is rejected, and the subsequent jury verdict is more favorable to the offeror than the offer of judgment would have been, "the offeree must pay to the offeror the offeror's actual costs incurred in the prosecution or defense of the action."  MCR 2.405(D)(1).  Actual costs include reasonable attorney fees.  MCR 2.405(A)(6).  The trial court must determine the actual costs incurred in making an award under this rule, and may decline to award attorney fees "in the interest of justice."  MCR 2.405(D)(3).

The interest-of-justice exception is an exception to the general rule, and should only be applied in unusual circumstances.  *AFP Specialties*, 303 Mich App at 518.  The exception may apply "when an offer is made for the purpose of 'gamesmanship' and not a sincere effort at negotiation."  *Id.* at 519 (citations omitted).

In this case, defendants made an offer of judgment to plaintiffs in August 2020, offering one dollar to each plaintiff as well as offering to dismiss the counterclaim.  Plaintiffs argue that this offer was *de minimis* and an attempt at gamesmanship.  The trial court disagreed, as do we.  Although defendants' monetary offer was negligible, the offer to dismiss the counterclaim was a valuable one—worth at least $60,000, not even considering the fact that acceptance of the offer would have precluded any chance of plaintiffs having to pay defendants' attorney fees.  Plaintiffs never made a counteroffer, and did not request a specific amount of damages until the very end of trial, leaving the trial court with very little to which to compare defendants' offer in determining whether it was de minimis.  See *Tennie Corp v Boardwalk Commercial, LLC*, 315 Mich App 1, 21-22; 888 NW2d 267 (2016).  And even if it was reasonable for plaintiffs to refuse the offer, the reasonableness of a party's refusal does not constitute unusual circumstances warranting the application of the interest-of-justice exception.  Under these circumstances, the trial court did not abuse its discretion by awarding actual costs and declining to apply the interest-of-justice exception.  *AFP Specialties*, 303 Mich App at 518.

## B. REASONABLENESS OF FEE AWARD

Plaintiffs argue that, even if the trial court did not abuse its discretion by awarding actual costs, including attorney fees, it erred by determining that the fees awarded were reasonable. We disagree.

The burden of proving the reasonableness of fees lies with the party requesting them. *Smith*, 481 Mich at 528-529. "[A] trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services." *Id*. at 530. "This number should be multiplied by the reasonable number of hours expended in the case." *Id*. at 531. The resulting number may be adjusted up or down based on several additional factors. *Id*.

Plaintiffs fault the trial court for not explicitly stating its findings regarding each of the factors listed in *Smith* for determining the reasonableness of a fee award. But the trial court did explicitly reference *Smith* and noted that the parties had presented extensive argument on each of the factors. It then determined the fee customarily charged in the area for similar legal services and determined that, if anything, defendants' counsel charged "under the market." Plaintiffs argue that the hourly fees charged, $341 per hour for one of defendants' attorneys and $300 per hour for the other, were excessive. Both fees were near or below the average fees charged by attorneys practicing in the Ann Arbor area, according to the evidence presented to the trial court. Contrary to plaintiffs' argument, there is no indication that the trial court primarily relied on anecdotal statements or the subjective analysis of the attorneys seeking the fee award. See *Van Elslander v Thomas Sebold & Associates*, 297 Mich App 204, 233; 823 NW2d 843 (2012).

The trial court then determined that the hours spent on the case were reasonable. Plaintiffs argue that the trial court should not have included 20 hours spent by defendants' counsel on the sale of the gas station, which occurred during this litigation. We disagree. The sale of the gas station and the distribution of the proceeds were essential parts of this litigation. The sale also required Shekoohfar to obtain Esmael's waiver of his right of first refusal while Esmael was suing him for breach of contract. On the record before this Court, the trial court's decision to include those hours in the attorney fee award was within the range of principled outcomes. *Smith*, 481 Mich at 526.

Regarding the remaining factors set forth in *Smith*, while the trial court did not discuss them at length, it did state that it had reviewed the factors and found that none of them supported lowering the fee award. The parties argued the remaining factors extensively before the trial court, and on appeal plaintiffs do not identify any specific factors beyond the hourly rate and amount of hours charged that they believe should have applied to lower the award. We conclude that the trial court did not abuse its discretion by determining that the fees requested were reasonable, notwithstanding the fact that it did not make explicit findings on every *Smith* factor.

Affirmed. As the prevailing party, defendants may tax costs. MCR 7.219(A).

/s/ Mark T. Boonstra
/s/ James Robert Redford
/s/ Philip P. Mariani